**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **BARRY WHITE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:07-0567** |
| | ) | |
| **THOMAS McBRIDE, Warden,** | ) | |
| **Mount Olive Correctional Complex,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending is Respondent's Motion to Dismiss Petition as Untimely Filed (Document No. 10.). By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 2.) Having considered the facts and the applicable law, the undersigned respectfully recommends that Respondent's Motion be granted.

**PROCEDURAL AND FACTUAL BACKGROUND**

On February 14, 2001, the Grand Jury of Mercer County, West Virginia, returned an One Hundred Twenty (120) Count Indictment against Petitioner, charging him with sexual abuse and sexual assault involving minor children. (Document No. 10-2, p. 2, Exhibit 1.) Following a jury trial conducted on December 4 - 7, 2001, Petitioner was convicted of 105 counts of "Sexual Assault First Degree and Sexual Abuse by a Custodian."(Id., p. 7, Exhibit 2.) By Order entered on April 24, 2002, Petitioner was sentenced to multiple consecutive terms totaling 100 to 220 years in the State penitentiary. (Id., p. 8, Exhibit 2.) On October 28, 2002, Petitioner, by counsel, Ms. Susan Henderson, appealed his conviction and sentence to the Supreme Court of Appeals of West Virginia

[SCAWV]. (<u>Id.</u>, p.11, Exhibit 3.) By a three to two vote of the Justices of the SCAWV, the Court refused Petitioner's appeal on May 13, 2003. (<u>Id.</u>)[1] On November 30, 2005, Petitioner, by all appearances acting *pro se*, filed a Petition for Writ of *Habeas Corpus* in the Circuit Court of Mercer County.[2] (<u>Id.</u>, p. 13, Exhibit 4.) By Order dated January 20, 2006, Circuit Court Judge Frazier denied Petitioner's *habeas* Petition. (<u>Id.</u>) On July 21, 2006, Petitioner, by counsel, Mr. David Smith, filed his appeal of the denial of his State *habeas* Petition to the SCAWV. (<u>Id.</u>, p. 15, Exhibit 5.) The SCAWV refused his Petition on September 7, 2006. (<u>Id.</u>)

On September 13, 2007, Petitioner, by counsel, Mr. Smith, filed a Petition Under 28 U.S.C. § 2254 For Writ of *Habeas Corpus* By a Person in State Custody. (Document No. 1.) Petitioner raises the following issues as grounds for *habeas* relief:

---

[1] 28 U.S.C. § 2244(d)(1)(A) provides that Section 2254 *habeas* petitions must be filed within one year after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." If the Petitioner does not petition for review in the United States Supreme Court upon the denial of direct review in the highest State Court, then the one-year limitation period begins to run 90 days after judgment is entered in the highest State Court (i.e., when the period for filing a petition for review in the United States Supreme Court expires). *See Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000). Petitioner's direct appeal of his conviction was refused by the SCAWV on May 13, 2003. Petitioner did not file a Petition for review in the United States Supreme Court, and therefore his conviction became final by the expiration of the time for seeking such review on August 13, 2003 (90 days after the SCAWV refused his Petition for Appeal of his conviction and sentence). The 28 U.S.C. § 2244(d)(1)(A) one-year period of limitation began to run on that date subject to tolling pursuant to 28 U.S.C. § 2244(d)(2) while a properly filed application for State post-conviction review was pending. The one-year period of limitation expired on August 13, 2004. Petitioner filed a Petition for Writ of *Habeas Corpus* in the Mercer County Circuit Court on November 30, 2005, 2 years and 3 ½ months after his conviction and sentence became final. The one-year period of limitation expired 1 year 3 ½ months before Petitioner filed his State *habeas* Petition, and Petitioner's filing of his State *habeas* Petition could therefore have had no tolling effect upon the one-year period of limitation.

[2] Petitioner's State *habeas* Petition is eleven pages long. The Petition is seven pages long and states eight grounds for relief, most in one sentence. The remaining four pages is a *Losh* Checklist of Grounds Asserted or Waived in Post-Conviction Habeas Corpus Proceeding.

**Ground one**: Petitioner's right to confrontation as served by the Sixth Amendment to the United States Constitution and its counterpart in the West Virginia Constitution was violated.

> **Supporting FACTS**: Petitioner's right to confrontation was violated by the Court permitting the hearsay testimony of Dr. Gregory Wallace and the Play Therapist, Phyllis Hasty.

**Ground two**: Petitioner's legal counsel was ineffective as a matter of law.

> **Supporting FACTS**: Petitioner's trial counsel was ineffective by (1) failing to object to the admission of Rule 404(b) evidence; (2) failing to prevent the admission of Petitioner's prior criminal record; (3) failing to object or attempt to limit testimony regarding the mother's mistreatment of the child victims; and (4) failing to object to Phyllis Hasty vouching for the child victim's credibility.

**Ground three**: Petitioner was denied his right to jury trial as secured to him by the Sixth Amendment of the United States Constitution and his right to due process of law.

> **Supporting FACTS**: The charge to the jury whereby Petitioner could have been convicted of 105 counts of sexual offenses without the State proving a single direct instance of sexual misconduct constitutes a denial of his right to due process of law and his right to be tried by a jury.

**Ground four**: Petitioner's potential sentence of One Thousand Two Hundred Ten years (1,210) to Two Thousand Five Hundred Eight years (2,508) of incarceration violates the Eighth Amendment's prohibition of cruel and unusual punishment.

> **Supporting FACTS**: Petitioner received more time than a murderer receives in West Virginia without causing a significant physical inquiry to anyone. Hence, Petitioner argues that the sentences are not only excessive, but also disproportionate.

(Document No. 1.) On May 20, 2008, the undersigned ordered Respondent to file an Answer to the allegations contained in the Petition and show cause, if any, why the Writ of *Habeas Corpus* should not be granted. (Document No. 7.) Respondent filed his Answer and the pending Motion to Dismiss on July 7, 2008. (Document Nos. 9 - 11.) Respondent argues that Petitioner's Petition must be dismissed as untimely. (Document No. 11.) On July 25, 2008, Mr. Smith filed a Response to the Motion to Dismiss arguing that Petitioner's Petition was timely filed within the one-year statute of limitations period. (Document No. 12.) Specifically, Mr. Smith argues as follows:

3

> Petitioner's exhausting of State remedies commenced on September 20th, 2006. Your Petitioner then filed his 2254 action in and before this Honorable Court on September 13, 2007. This filing was within one (1) year from the date he received official notice that his Appeal of his Writ of Habeas Corpus from Circuit Court to the West Virginia State Supreme Court had been denied.

(Id., p. 3.) By letter dated September 29, 2008, Petitioner advised the Court that he believed Mr. Smith acted ineffectively in failing to timely file his Petition. Specifically, Petitioner states as follows:

> For the record, I want to notify the court that since the time my direct appeal was denied in March of 2003, my family paid Attorney David Smith, who is not appearing on my behalf, upwards of $7,000 to be responsible for the handling of my constitutional rights, interest, and needs as it relates to this case.

> Mr. Smith was hired in April of 2003 and has since been my attorney since that time. However, during the course of his representation, now approaching six years, I have spoke with him two times on the phone, and he has returned my letters approximately five times. Just recently I had to ask the clerk for my files to learn of the status of my case, and that my one year time limit has ran out. In fact, on June 20, 2008, speaking to a 'jailhouse lawyer,' because I could not reach Mr. Smith, I learned for the first time that there was a one year statute of limitations for filing a federal habeas.

> At this time, I ask that you please do not fault me for my attorney's mistakes. As you can see by the enclosed documents I've just recently gained my GED and learned how to read and write. My family paid Attorney David Smith all that money, because he said he would protect me, and that he would have to be paid more for each and every proceeding, including the present proceeding....

(Document No. 15.) In view of Petitioner's allegation that he retained Mr. Smith to handle his State *habeas* proceedings in March, 2003, and the filing of Petitioner's State *habeas* Petition on November 30, 2005, well after the expiration of the 28 U.S.C. § 2244(d)(1)(A) one-year period of limitation, the undersigned found that an evidentiary hearing was necessary to determine whether extraordinary circumstances as found in Goedeke v. McBride, 437 F. Supp.2d 590 (S.D.W.Va. 2006)(Chief Judge Goodwin) justify equitable tolling in the instant case and filed an Order

4

scheduling the hearing. (Document No. 16.) Anticipating that Mr. Smith would testify at the hearing, the undersigned appointed Mr. Thomas Gillooly to represent Petitioner at the evidentiary hearing. (Document No. 18.) An evidentiary hearing was held on January 29, 2009, and the Court heard the testimony of Mr. Smith, Ms. Susan Patteson, Petitioner's mother, Mr. Curtis Randall Patteson, Petitioner's step-father, and Petitioner.

Mr. Smith testified referring to an office account ledger (Respondent's Exhibit 1.) indicating that Petitioner's mother, Ms. Patteson, retained him on July 8, 2004, following Petitioner's unsuccessful appeal of his conviction and sentence "to try to overturn his conviction and fight as long and as far and as hard as I could." Mr. Smith testified that he informed Ms. Patteson that it was necessary to exhaust the State *habeas* process before going on to Federal *habeas* proceedings. Mr. Smith testified that he required a $5,000 fee for representing Petitioner in the State *habeas* matters and Ms. Patteson paid him a $1,000 retainer and then made payments as she could until she paid the full amount. It appears that in October, 2006, Mr. Smith required Ms. Patteson to pay an additional $800. Mr. Smith testified that after trying in vain to get in touch with Petitioner's trial counsel to obtain their files, he finally went to their offices and got them.[3] He testified that he filed Petitioner's State *habeas* Petition "just as quick as I could." As appears from the Circuit Court's docket sheet, the Petition was filed on November 30, 2005. While Mr. Smith testified that he filed

_____

[3] Mr. Gillooly contacted Ms. Henderson, Petitioner's trial attorney, to find out when Mr. Smith obtained the file from her. Ms. Henderson reported that she still has the original file and its contents. She stated that she made copies of the file as Petitioner requested and sent them to him in 2002. She stated that "While I was informed that David Smith had been retained on the state habeas, to my knowledge he never requested the file or any copies. Mr. Smith and I spoke about the habeas whenever we 'ran into each other' at court and I told him that I would do anything I could to help him with the habeas." The undersigned further notes from the docket of the underlying criminal proceedings that the entire record including transcripts of hearings and the trial was available in the office of the Clerk of the Circuit Court when Mr. Smith was retained.

Petitioner's Petition for *habeas* relief in the Circuit Court of Mercer County, it is not evident that he actually did. Mr. Smith did not sign the Petition or indicate in any other way that he was representing Petitioner. Rather, it appears that Petitioner filed the Petition himself and was acting *pro se* as those proceedings were initiated.[4] Mr. Smith first made an appearance in Petitioner's State *habeas* proceeding by submitting an Order filed on May 18, 2006, allowing him additional time to file an appeal of Circuit Judge Frazier's Order dismissing Petitioner's *habeas* Petition. Mr. Smith submitted further such Orders which were filed on June 19, July 6 and July 11, 2006. Mr. Smith filed Petitioner's Petition for Appeal on July 17, 2006. Mr. Smith stated that he had never filed a Federal Petition for *habeas* relief and was not thinking about Petitioner's entitlement to seek *habeas* relief in Federal Court. He testified that he was aware of the one-year period of limitations and thought that it ran from the time when Petitioner completed the State *habeas* process. He testified that he thought that he was in good shape in that regard. When asked why it took nearly a year after the SCAWV refused to consider Petitioner's appeal of Judge Frazier's decision dismissing his *habeas* proceeding, Mr. Smith testified that unfamiliarity with federal *habeas* proceedings "would be part of it" and he was working on compiling testimony and information respecting an expert witness who testified in Petitioner's case. Mr. Smith stated that he did not have any meetings with Petitioner and spoke with him by phone two or three times. He testified that he told Ms. Patteson that *habeas* relief is "a long shot" and indicated that he spoke with her two or three times in person and took her phone calls if he was in the office. In speaking with Ms. Patteson about her expectations respecting his filing of Petitioner's *habeas* Petition, Mr. Smith stated "[d]id [Ms. Patteson] want it filed as

---

[4] The undersigned understands now that Mr. Smith prepared the Petition, sent it to Petitioner for signing and filed it without signing it when he received it back from Petitioner.

expediently as I could – as I could get it done, yes." He stated that he did not give Ms. Patteson a
date by which he would file the State *habeas* Petition but told her that he would file it "[a]s soon as
I could get it out."      Ms. Patteson testified referring to receipts she received from Mr. Smith's
office when she made her payments (Petitioner's Exhibit 1.) that she retained Mr. Smith to represent
Petitioner in post-conviction proceedings on May 28, 2003, paying him $200 initially.[5] She testified
that she paid Mr. Smith's $1,000 retainer on July 8, 2003, and then made payments as she could
from her earnings from cleaning houses and caring for elderly persons until she paid Mr. Smith's
$5,000 fee. Ms. Patteson always paid in cash, delivered her payments to Mr. Smith's office in person
or through her husband and obtained a receipt. Ms. Patteson testified that later in 2006 Mr. Smith
required her payment of an additional $800 to pay a filing fee or some expense and she made
payments of $100 thereafter. She stated that she talked with Mr. Smith very few times when she
went in to make payments and did not talk to him by phone. She testified that "I've asked about a
deadline, but he – like he didn't know either, I don't guess. Evidently not, because one day he called
us into the office when he had filed something to put in for Barry and this is when he wanted the
extra money. He let us read what he had to file and I asked him, I said 'Is there a deadline?' Or, you
know, the deadline was mentioned. He said, 'I don't know; I'm sure it is,' or something to that effect
. . .."

Mr. Smith was recalled and questioned respecting Ms. Patteson's receipts which indicated
that she retained him over a year before he said she did. Mr. Smith indicated that the receipts
appeared to be legitimate. He has since confirmed that they are. (Document No. 31.)

---

[5] Thus, Ms. Patteson refuted Mr. Smith's testimony that he was retained on July 8, 2004.

Mr. Patteson testified that he took Ms. Patteson's payments in to Mr. Smith's office a couple of times and obtained receipts for her payments as the receipts indicate.

Petitioner testified that he was incarcerated at Potomac Highlands Regional Jail after his April, 2002, sentencing and was transferred to MOCC on April 27, 2004. He testified that he asked his mother to hire Mr. Smith to represent him after his direct appeal and called Mr. Smith collect thereafter. He testified that he spoke with Mr. Smith by telephone two or three times after his mother retained him, the first within about six months after Mr. Smith was retained while he was at Potomac Highlands Regional. He stated that he asked Mr. Smith "how my habeas was going and he said that he was still working on it; that he hadn't had time to prepare it or anything, that he was still working on it." Petitioner stated that he has difficulty reading and writing, but with the help of other inmates, he sent a letter to Mr. Smith on June 8, 2004, requesting a copy of his file in the underlying criminal case. A copy of the June 8, 2004, letter was introduced into evidence. Petitioner indicated that Mr. Smith did not send him a copy of his file in the underlying criminal case or documents contained in it but did send him a copy of his State *habeas* Petition. Petitioner stated that he asked Ms. Patteson to "[j]ust see how – how things was going and when he was going to file my first one, habeas, because we had hired him and he had sat on my case for like three years before he even filed it. So . . . after a year or so, . . . I'm getting concerned. I know it takes time but . . . I'm like . . . just see what is going on with him, call over there, and ask him what's going on . . . because we're probably . . . running short on our time frame." Petitioner testified that he spoke with Ms. Patteson about firing Mr. Smith "but I knew they couldn't afford it . . .. They was lucky to do what they did for me. My mom worked herself to death just to do that for me so . . . I really didn't want to . . . just tell him 'You're fired,' and my mom lose all of her money . . . so I kept him on my case hoping

maybe that he could get something done, but that never happened." Petitioner testified that when he did speak with Mr. Smith on the telephone about the State *habeas* Petition, Mr. Smith stated that "he was still working on it" and when he asked him how much time he had, Mr. Smith replied that "they were not even on the clock." Petitioner testified that he did not ask Mr. Smith about any applicable period of limitations and learned of it in June, 2008, in conversation with other inmates.

## **DISCUSSION**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 [AEDPA], effective April 24, 1996, provides that Section 2254 *habeas* petitions must be filed within one year after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[6] Quite

---

[6] Title 28, United States Code, Section 2244(d)(1) provides as follows:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

9

plainly, the Section 2244 one-year period of limitations begins running when all avenues of direct appeal have been or could have been exhausted, not when the State collateral review process is concluded. The one-year limitation period may be subject to equitable modification. See Harris v. Hutchinson, 209 F.3d 325, 328 - 331 (4ᵗʰ Cir. 2000). The doctrine of equitable tolling has generally been applied in two distinct situations. First, the doctrine has been applied in situations where the petitioner was prevented from asserting his claims due to the respondent's wrongful conduct. Id. at 330. Second, the doctrine has been applied in situations where the petitioner was prevented from asserting his claims due to circumstances beyond his control or "external to the party's own conduct." Id. The Harris Court made it clear that equitable tolling should rarely be allowed stating as follows (Id.):

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

An attorney's negligence or mistake in interpreting the Section 2244 statute of limitations does not constitute an extraordinary circumstance warranting equitable tolling. Id. at 331; see also United States v. Sosa, 364 F.3d 507, 512 (4ᵗʰ Cir. 2004); Rouse v. Lee, 339 F.3d 238, 248 - 249 (4ᵗʰ Cir. 2003) Mathers v. Seifert, 2008 WL 2437629 (S.D.W.Va.)(Chief Judge Goodwin).[7] The errors

---

[7] The undersigned notes that there is no time limit for the filing of a State *habeas* Petition and there is no right to counsel in State *habeas* proceedings under West Virginia law. Rather, *W.Va. Code* § 53-4A-4 states that under certain circumstances, the Circuit Court must appoint counsel in *habeas* proceedings as follows:

of counsel are not circumstances beyond a petitioner's control or "external to [his] own conduct." "[C]ounsel's errors are attributable to [the petitioner] not because he participated, ratified, or condoned their decisions, but because they were his agents, and their actions were attributable to him under standard principles of agency." Rouse v. Lee, 339 F.3d at 249. Beyond mere errors, most Courts of Appeals, however, "have declined to impute attorney misconduct to a client where the attorney has made misrepresentations to the client, disregarded the client's instructions, refused to return documents, or abandoned the client's case." Downs v. McNeil, 520 F.3d 1311, 1321 (11th Cir. 2008); see also Fleming v. Evans, 481 F.3d 1249, 1256 (10th Cir. 2007). "It is not inconsistent to say that attorney error *normally* will not constitute the extraordinary circumstances required to toll the AEDPA limitations period while acknowledging that at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary." Baldayaque v. United States, 338 F.3d 145, 152 (2nd Cir. 2003)(emphasis in decision). For example, an attorney's repeated false assurances to a petitioner concerning the preparation of a petition for *habeas corpus* may constitute extraordinary circumstances warranting equitable tolling. See Goedeke v.McBride, 437 F. Supp.2d 590 (S.D.W.Va. 2006)(Chief Judge Goodwin)(finding that the statute of limitations was equitably

---

A petition filed under the provisions of this article may allege facts to show that the petitioner is unable to pay the costs of the proceeding or to employ counsel, may request permission to proceed in forma pauperis and may request the appointment of counsel. If the court . . . is satisfied that the facts alleged in this regard are true and that the petition was filed in good faith, and has merit or is not frivolous, the court shall order that the petitioner proceed in forma pauperis, and the court shall appoint counsel for the petitioner.

Judge Frazier considered the grounds which Petitioner raised in his *habeas* Petition on their merits. He did not regard Petitioner's *habeas* Petition frivolous. It appear therefore that if Petitioner had requested appointment of counsel, Judge Frazier would have been required to assign an attorney to represent Petitioner.

tolled during the time period that petitioner was represented by appointed counsel in his State *habeas* proceeding because counsel made repeated false assurances that led petitioner to believe that counsel would complete his petition and petitioner had no reason to disbelieve counsel's assurances.); Mathers v. Seifert, 2008 WL 2437629, *4 (S.D.W.Va.)(Chief Judge Goodwin)(attorney's repeated reassurances that he was working on petitioner's habeas corpus petition when in fact no petition was prepared and filed for years constituted extraordinary circumstances.) An attorney's failure to take any action at all while the period of limitations is running may constitute an extraordinary circumstance. McLaughlin v. Lee, 2000 WL 34336152, *3 (E.D.N.C.)(The "[a]ttorneys . . . took up the duty of protecting petitioner's rights and represented to Petitioner that they would do so. Thereafter, they failed to make any effort to seek post-conviction relief. They placed Petitioner in the extraordinary situation of believing that he had counsel when, in fact, he had counsel in name only. This Court will not charge Petitioner with the duty of looking past the representations of counsel that they will protect his legal interests and file motions for appropriate relief.") Additionally, most Courts have required that the petitioner demonstrate that he or she has acted with reasonable diligence in pursuing *habeas* relief when his attorney has engaged in the sort of misconduct which constitutes an extraordinary circumstance. Baldayaque v. United States, 338 F.3d at 153. The Baldayaque Court identified several factors which might have a bearing upon whether a petitioner exercised reasonable diligence: (1) how promptly the petitioner employed or sought appointment of counsel to file a *habeas* petition; (2) petitioner's lack of funds to obtain another attorney; (3) the attorney's "assurances . . . that everything had been done that could be done"; (4) the attorney's failure to communicate directly with the petitioner at any time; (5) the petitioner's lack of education; and (6) the petitioner's incarceration and lack of direct access to legal

12

assistance. Id.

As noted above, Petitioner's direct appeal of his conviction was refused by the SCAWV on May 13, 2003. Petitioner did not file a Petition for review in the United States Supreme Court, and therefore his conviction became final by the expiration of the time for seeking such review on August 13, 2003 (90 days after the SCAWV refused his Petition for Appeal of his conviction and sentence). The Section 2244 one-year period of limitation began to run on that date subject to tolling pursuant to 28 U.S.C. § 2244(d)(2) while a properly filed application for State post-conviction review was pending. Ms. Patteson hired Mr. Smith to carry forward with *habeas* proceedings on May 28, 2003, and paid his $1,000 retainer on July 8, 2003 – just after the SCAWV refused Petitioner's direct appeal and over a month before the Section 2244 limitation period began to run. The one-year period of limitation expired on August 13, 2004. Petitioner's Petition for Writ of *Habeas Corpus* was filed in the Mercer County Circuit Court on November 30, 2005, almost 2 ½ years after Ms. Patteson retained Mr. Smith and 2 years and 3 ½ months after Petitioner's conviction and sentence became final. The one-year period of limitation expired 1 year and 3 ½ months before Petitioner filed his State *habeas* Petition, and Petitioner's filing of his State *habeas* Petition could therefore have had no tolling effect upon the one-year period of limitation.

Respecting equitable tolling, the focus is not upon the length of the delay but upon the reasons for it. Rouse v. Lee, 339 F.3d at 253. Ms. Patteson retained Mr. Smith in Petitioner's behalf well before the Section 2244 period of limitations began to run. Mr. Smith filed Petitioner's eleven page State *habeas* Petition almost 2 ½ years later. Clearly, Mr. Smith's negligence in failing to learn how the Section 2244 one-year period of limitations applied contributed to the delay. But beyond that as the record indicates, Mr. Smith told Petitioner and Ms. Patteson several times throughout the

2 ½ year period that he was working on Petitioner's *habeas* Petition and would file it as soon as he could. It is not evident that he did anything at all during the 1 year and 3 month period while the period of limitations was running. It is further not evident from Petitioner's State *habeas* Petition, as by all appearances it came to be filed *pro se*, that Mr. Smith did very much at all over the 2 ½ year period which elapsed before he filed it. Therefore, Mr. Smith misrepresented to Petitioner and Ms. Patteson that he was working on Petitioner's *habeas* Petition and would file it as soon as he could and as a practical matter abandoned them. Believing Mr. Smith and thinking that he was representing them though they were dissatisfied, they did nothing further to initiate State *habeas* proceedings and request that counsel be appointed. The undersigned finds based upon the factors identified by the Baldayaque Court as set forth above that Petitioner exercised reasonable diligence in seeking *habeas* relief. Petitioner hired Mr. Smith over a year before the Section 2244 limitations period expired. Petitioner had a limited education and was incarcerated, and Mr. Smith made assurances which led Petitioner to believe that he was working diligently on his case. The undersigned finds that Mr. Smith's misrepresentations and complete failure to act in representation of Petitioner while the limitations period was running constitute extraordinary circumstances beyond Petitioner's control and "external to [his] own conduct" which prevented Petitioner from taking steps to timely file his State *habeas* Petition. These circumstances permit the District Court in its discretion to apply the principle of equitable tolling and exclude the period from May 28, 2003, when Ms. Patteson retained Mr. Smith to represent Petition, until November 30, 2005, when Petitioner's State *habeas* Petition was filed, in consideration of the Section 2244 period of limitations. Pursuant to Section 2244(d)(2), the period between November 30, 2005, and January 20, 2006, when Judge Frazier denied Petitioner's *habeas* Petition is not counted. Petitioner had four

14

months to file an appeal to the SCAWV. <u>See</u> Rule 3(a) of the West Virginia Rules of Appellate Procedure. Mr. Smith obtained extensions of the time for filing Petitioner's appeal and filed Petitioner's appeal on July 21, 2006, six months after Judge Frazier denied Petitioner's Petition. While four months are not counted pursuant to Section 2244(d)(2), the last two months are. <u>See</u> <u>Mathers v. Seifert</u>, 2008 WL 2437629, 5 (S.D.W.Va.)("[w]hen the time for the petitioner to appeal the denial of his state court habeas petition expired, his state court habeas petition was no longer pending, and statutory tolling stopped. The fact that the petitioner filed a motion to appeal out of time makes no difference . . ..") Pursuant to Section 2244(d)(2), the period of time from July 21, 2006, to September 7, 2006, when the SCAWV refused Petitioner's appeal is not counted. With two months counting against the one-year limitation period as Mr. Smith exceeded the four month period within which he could file Petitioner's appeal of Judge Frazier's Dismissal of Petitioner's *habeas* Petition, Mr. Smith had until on or about July 7, 2007, to file Petitioner's Section 2254 Petition in the District Court. Mr. Smith did so on September 17, 2007, more than two months late.[8] It is evident that Mr. Smith filed Petitioner's Section 2254 Petition when he did either without knowing or thinking about the Section 2244 one-year period of limitations or misunderstanding how it worked. It is not evident that Mr. Smith made any representations to Petitioner or Ms. Patteson respecting his work on Petitioner's Federal *habeas* Petition as he did with respect to his State *habeas* Petition.[9] The undersigned does not find therefore that extraordinary circumstances exist which would permit

---

[8] Even on the basis of his own misunderstanding that the Section 2244 one-year period of limitations ran from the time Petitioner's State *habeas* proceedings were concluded, Mr. Smith filed Petitioner's Section 2254 Petition in this case late.

[9] Ms. Patteson's receipts indicate that she began making further payments in the amount of $100 each on October 5, 2006, about one month after the SCAWV refused Petitioner's appeal, and made her eighth payment on June 4, 2007, more than three months before Mr. Smith filed Petitioner's Section 2254 Petition.

equitable tolling of the period of time for Petitioner's filing of his Section 2254 Petition. The undersigned concludes that while equitable tolling of the one-year limitations period is appropriate for the period of time between May 28, 2003, and November 30, 2005, it is not appropriate for the periods of time between May 20 and July 21, 2006, and September 7, 2006, and September 13, 2007. Petitioner's Section 2254 Petition was filed in the District Court beyond the Section 2244 one-year limitation period. Respondent's Motion to Dismiss Petition as Untimely (Document No. 10.) should therefore be granted.

### PROPOSAL AND RECOMMENDATION

Accordingly, the undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's Motion to Dismiss Petition as Untimely Filed (Document No. 10.), **DISMISS** this matter and remove it from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

16

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Petitioner and transmit a copy to counsel of record.

Date: February 12, 2009.

R. Clarke VanDervort
United States Magistrate Judge

17