## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

|  |  |  |
|---|---|---|
| **BARRY WHITE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:07-0567** |
| | ) | |
| **DAVID BALLARD, Warden,** | ) | |
| **Mount Olive Correctional Complex,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Respondent's Motion for Summary Judgment (Document No. 82.), filed on October 18, 2013, by Christopher S. Dodrill, Assistant Attorney General. Petitioner, by counsel, Thomas Gillooly, filed his Response in Opposition on January 6, 2014. (Document No. 91.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant Respondent's Motion for Summary Judgment.

### PROCEDURAL HISTORY

On February 14, 2001, the Grand Jury of Mercer County, West Virginia, returned an One Hundred Twenty (120) Count Indictment against Petitioner, charging him with sexual abuse by a custodian and sexual assault involving minor children.[1] (Document No. 10-2, Exhibit 1, p. 2.) Following a jury trial conducted on December 4 - 7, 2001, Petitioner was convicted of 105 counts of "Sexual Assault First Degree and Sexual Abuse by a Custodian."(Id., Exhibit 2, p. 7.) By Order entered on April 24, 2002, Petitioner was sentenced to multiple consecutive terms totaling 100 to 220 years in the State penitentiary. (Id., Exhibit 2, p. 8.)

---

[1] Petitioner's wife, Jennifer White, the mother of the allegedly abused children, was charged but not tried with Petitioner. The matter were consolidated until trial.

On October 28, 2002, Petitioner, by counsel, Susan Henderson, appealed his conviction and

sentence to the West Virginia Supreme Court of Appeals, raising the following assignments of error:

1.  Barry White was deprived of his right to a fair trial because the Court erred in admitting testimony from witnesses who alleged they had read letters written by the defendant to his wife, said testimony constituting hearsay based upon letters not produced and authenticated and further representing privileged communications between a husband and wife.

2.  Barry White was deprived of his right to a fair trial because the court erred in permitting the testimony of witnesses with regard to alleged letters written by the defendant because the defendant was not timely notified of the existence of such witnesses.

3.  Barry White was deprived of his right to a fair trial because the Court erred in failing to grant Defendant's Motion to Dismiss Counts 62, 63, 66, 67, 70, 71, 74, 75, 78, 79, 82, 83, 84, 86, 87, 88, 90, 91, 92, 94, 95, 96, 98, 99, 100, 102, 103, 104, 106, 107, 108, 110, 111, 112, 114, 115, 116, 118, 119, and 120.[2]

4.  Barry White was deprived of his right to a fair trial because the court erred in allowing the testimony of Phyllis Hasty, the play therapist who worked with the four alleged victims in this case.

5.  Barry White was deprived of his right to a fair trial because the Court erred in allowing evidence of flight.

6.  The verdict should be set aside because the jury failed to consider and deliberate on each and every charge lodged against the defendant, Barry White.[3]

(Document No. 57-1, Exhibit 6.) The West Virginia Supreme Court of Appeals refused Petitioner's

appeal by Order entered on May 13, 2003. (Document No. 10-2, Exhibit 3.)

---

[2] Counsel argued that "sufficient evidence was not presented to the grand jury to substantiate the charges." (Document No. 57-1, Exhibit 6, p. 13.)

[3] Counsel argued that Petitioner was "denied his right to a fair trial because the jury failed to perform its duties as required by law and the constitution of this State and the United States." Counsel asserted that following the three day jury trial, the jury was charged with deliberating on one hundred five counts of sexual misconduct by Petitioner relating to four stepchildren and the jury returned a guilty verdict after less than two hours of deliberation. (Document No. 57-1, Exhibit 6, pp. 16 - 17.)

On November 30, 2005, Petitioner filed a Petition for Writ of *Habeas Corpus* in the Circuit Court of Mercer County.[4] (Id., Exhibit 4, p. 13.) Petitioner raised the following grounds for *habeas* relief:

A.    Ineffective Assistance of Counsel. Counsel failed to object to testimonial hearsay of Dr. Wallace and Phyllis Hasty.

B.    Violation of Right to Confrontation. The Court admitted into evidence testimonial hearsay from Dr. Wallace and Phillis Hasty.

C.    Ineffective Assistance of Counsel. Irrelevant, Immaterial, and Highly Prejudicial Material Permitted into Evidence. Counsel failed to object to testimony from Phyllis Hasty that Barry White poisoned Halloween candy.

D.    Ineffective Assistance of Counsel. Counsel elicited and failed to object to testimony concerning his prior arrest and incarceration for voluntary manslaughter. Counsel also failed to ask for a cautionary instruction concerning the same.

E.    Ineffective Assistance of Counsel. Counsel elicited testimony concerning, and failed to object to testimony, regarding the mother Jennifer White's abuse of the children, including but not limited to repeated beatings, walking out of termination hearings, etc. Counsel also failed to request a cautionary instruction regarding the same. Counsel also failed to object to or request a cautionary instruction concerning evidence of the mother's parental rights being terminated.

F.    Ineffective Assistance of Counsel. Counsel produced an expert, and then failed to object to testimony from the expert that Petitioner was a drunk, was incarcerated, and had a criminal past.

G.    Due Process Violation. The use of jail house informants violated Petitioner's rights to due process of law.

H.    Ineffective Assistance of Counsel. Counsel failed to properly investigate the case, failed to get pertinent records, failed to interview and call material witnesses, failed to use discovery to get scientific studies, etc.

(Court's Exhibit 1.) Petitioner also filed a "Losh List" dated November 18, 2005. (Id.) The following

---

[4] Based upon the record in this action, the Court concluded that the State *habeas* petition was prepared by Petitioner's prior counsel, Mr. David Smith.

3

errors were asserted in the "Losh List":

1.    Indictment shows on face no offense was committed.
2.    Prejudicial joinder of defendants.
3.    Non-disclosure of Grand Jury minutes.
4.    Refusal to turn over witness notes after witness has testified.
5.    Claims concerning use of informers to convict.
6.    Constitutional errors in evidentiary rulings.
7.    Claims of prejudicial statements by prosecutor.
8.    Sufficiency of evidence.
9.    Excessive sentence.

(Court's Exhibit 2.) By order dated January 20, 2006, the Circuit Court denied the *habeas* petition

without conducting an omnibus hearing. (Document No. 57-1, pp. 45 - 50.)

On July 21, 2006, Petitioner, by counsel, Mr. David Smith, filed his appeal of the denial of

the State *habeas* petition to the West Virginia Supreme Court of Appeals. (Document No. 10-1,

Exhibit 5, p. 15.) Petitioner raised the following grounds for relief:

1.    Petitioner's right to confrontation as served by the Sixth Amendment to the United States Constitution and its counterpart in the West Virginia Constitution was violated.

2.    Petitioner's legal counsel was ineffective as a matter of law.

   a.    Counsel was ineffective in failing to object to testimony by Play Therapist, Phyllis Hasty, that Petitioner poisoned Halloween candy.

   b.    Counsel was ineffective in the matter in which they handled the issue of his criminal record.

   c.    Counsel was ineffective in that they failed to object or attempt to limit testimony as to how the children's mother mistreated them.

   d.    Counsel was ineffective in that they permitted, without objection, the State's expert witness Phyllis Hasty, to vouch for the credibility of the children.

3.    Petitioner was denied his right to jury trial as secured to him by the Sixth Amendment of the United States Constitution and his right to due process of law.

4

     4.     Petitioner's potential sentence of (1,210) One thousand, two hundred, ten years to (2,580) two thousand, five hundred, eight years of incarceration is in violation of the Eighth Amendment's prohibition of cruel and unusual punishment.

(Document No. 57-1, Exhibit 7, pp. 24 - 43.) The West Virginia Supreme Court of Appeals refused his Petition on September 7, 2006. (Document No. 10-1, Exhibit 5, p. 15.)

On September 13, 2007, Petitioner, by counsel, Mr. David Smith, filed a Petition Under 28 U.S.C. § 2254 For Writ of *Habeas Corpus* By a Person in State Custody. (Document No. 1.)

Petitioner raises the following issues as grounds for *habeas* relief:

**Ground one**: Petitioner's right to confrontation as served by the Sixth Amendment to the United States Constitution and its counterpart in the West Virginia Constitution was violated.

    **Supporting FACTS**: Petitioner's right to confrontation was violated by the Court permitting the hearsay testimony of Dr. Gregory Wallace and the Play Therapist, Phyllis Hasty.

**Ground two**: Petitioner's legal counsel was ineffective as a matter of law.

    **Supporting FACTS**: Petitioner's trial counsel was ineffective by (1) failing to object to the admission of Rule 404(b) evidence; (2) failing to prevent the admission of Petitioner's prior criminal record; (3) failing to object or attempt to limit testimony regarding the mother's mistreatment of the child victims; and (4) failing to object to Phyllis Hasty vouching for the child victim's credibility.

**Ground three**: Petitioner was denied his right to jury trial as secured to him by the Sixth Amendment of the United States Constitution and his right to due process of law.

    **Supporting FACTS**: The charge to the jury whereby Petitioner could have been convicted of 105 counts of sexual offenses without the State proving a single direct instance of sexual misconduct constitutes a denial of his right to due process of law and his right to be tried by a jury.

**Ground four**: Petitioner's potential sentence of One Thousand Two Hundred Ten years (1,210) to Two Thousand Five Hundred Eight years (2,508) of incarceration violates the Eighth Amendment's prohibition of cruel and unusual punishment.

    **Supporting FACTS**: Petitioner received more time than a murderer receives in West Virginia without causing a significant physical inquiry to anyone. Hence, Petitioner argues that the sentences are not only excessive, but also disproportionate.

5

(Id.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 2.) On May 20, 2008, the undersigned ordered Respondent to file an Answer to the allegations contained in the Petition and show cause, if any, why the Writ of *Habeas Corpus* should not be granted. (Document No. 7.) Respondent filed his Answer and a Motion to Dismiss on July 7, 2008. (Document Nos. 9 - 11.) Respondent argued that Petitioner's Petition must be dismissed as untimely. (Document No. 11.) On July 25, 2008, Mr. Smith filed a Response to the Motion to Dismiss arguing that Petitioner's Petition was timely filed within the one-year statute of limitations period. (Document No. 12.) By letter dated September 29, 2008, Petitioner advised the Court that he believed Mr. Smith acted ineffectively in failing to timely file his Petition. (Document No. 15.) In view of Petitioner's allegation that he retained Mr. Smith to handle his State *habeas* proceedings in March, 2003, and the filing of Petitioner's State *habeas* Petition on November 30, 2005, well after the expiration of the 28 U.S.C. § 2244(d)(1)(A) one-year period of limitation, the undersigned found that an evidentiary hearing was necessary to determine whether extraordinary circumstances as found in <u>Goedeke v. McBride</u>, 437 F. Supp.2d 590 (S.D.W.Va. 2006)(Chief Judge Goodwin) justify equitable tolling in the instant case and filed an Order scheduling the hearing. (Document No. 16.) Anticipating that Mr. Smith would testify at the hearing, the undersigned appointed Mr. Thomas Gillooly to represent Petitioner at the evidentiary hearing and in further proceedings thereafter if appropriate. (Document No. 18.) By letter dated January 27, 2009, Petitioner advised Mr. Smith that he was "fired" as counsel. (Document No. 28.) An evidentiary hearing was held on January 29, 2009. (Document No. 29.) The undersigned entered his Proposed Finding and Recommendation on December 12, 2009, recommending that

6

Respondent's Motion to Dismiss be granted. (Document No. 36.) By Memorandum Opinion and Order dated March 31, 2009, the District Court adopted the undersigned's Proposed Finding and Recommendation in part, and rejected it to the extent it recommended that the Court grant Respondent's Motion to Dismiss.[5] (Document No. 45.) The District Court denied Respondent's Motion to Dismiss and referred the matter to the undersigned for further proceedings. (Id., p. 4.) By Order entered April 3, 2009, the undersigned granted Petitioner the opportunity to file an Amended Section 2254 Petition. (Document No. 46.)

On June 30, 2009, Petitioner, by counsel, Thomas Gillooly, filed an Amended Petition. (Document No. 52.) Respondent filed a Motion for More Definite Statement on August 25, 2009. (Document No. 55.) By Order entered on September 16, 2009, the undersigned denied Respondent's Motion for More Definite Statement. (Document No. 63.) Specifically, the undersigned set forth the grounds for *habeas* relief asserted by Petitioner and found that the Amended Petition appeared to contain both exhausted and unexhausted claims. (Id.) On October 13, 2009, Petitioner filed a Motion for Stay of Proceedings to Permit Exhaustion of State Remedies. (Document No. 66.) By Order entered on October 15, 2009, the undersigned granted Petitioner's Motion to Stay. (Document No. 67.)

On July 13, 2010, Petitioner, by counsel, Thomas Gillooly, filed his Petition for Writ of *Habeas Corpus* in the Circuit Court of Mercer County. White v. Ballard, Civil Action No. 10-C-294 (Cir. Ct. Mercer Co. April 26, 2012). (Document No. 84-1, pp. 359-95.) Petitioner raised the

---

[5]  The undersigned determined that Petitioner's Section 2254 Petition was untimely because the doctrine of equitable tolling applied to the period of time Mr. Smith represented Petitioner in his State *habeas* proceedings, but not to the period of time he represented Petitioner in his federal *habeas* proceedings. (Document No. 36.) The District Court determined that Petitioner's Petition was timely because the doctrine of equitable tolling applied to the entire period of time that Mr. Smith represented Petitioner, which included both State and federal *habeas* proceedings. (Document No. 45.)

following grounds for *habeas* relief:

1.    Under the particular facts and circumstances of this case, the refusal of the State to permit Petitioner to confront his purported accusers, that is, his wife's children, or at least those of them who purportedly accused him, deprived Petitioner of his rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Article III, § 14, of the West Virginia Constitution.

2.    Under the particular facts and circumstances of this case, the refusal of the State to permit Petitioner to confront his purported accusers, that is, his wife's children, or at least those of them who purportedly accused him, deprived Petitioner of his rights under the Due Process Clause of the United States Constitution, as made applicable to the states by the Fourteenth Amendment; and under Article III, § 10, of the West Virginia Constitution.

3.    The effect of the errors described above, and to be further developed through discovery and evidentiary proceedings, was to render Petitioner's trial fundamentally unfair, denying Petitioner his rights under the Due Process Clause of the United States Constitution, as made applicable to the states by the Fourteenth Amendment; and under Article III, § 10, of the West Virginia Constitution. This includes the denial of Petitioner's right to substantive due process.

4.    The representation provided by Petitioner's court-appointed counsel at trial and on direct appeal constituted ineffective assistance of counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article III, § 14, of the West Virginia Constitution as particularly evidenced; without limitation, by their failure to invoke Petitioner's rights regarding the evidence not produced, or destroyed, by the State (Petitioner's letters); by their failure to pursue the effect on the alleged child victims, and specifically on the credibility of their reports of abuse, of their prior experience with sexual abuse allegations, involving their natural father; by their failure to obtain additional psychological and psychiatric evidence, or to present expert testimony to counter that presented by the State's witnesses; by their failure to object to the prosecution's statements to the jury during opening statements, as detailed above.

5.    The Petitioner's sentence, under all of the facts and circumstances of the case, is so disproportionate to the offenses involved that it violates the cruel and unusual prohibition of the Eighth Amendment to the United States Constitution, and Article III, § 5, of the West Virginia Constitution.

6.    Petitioner incorporates in this Petition the grounds set forth in his direct

8

appeal petition, his circuit court habeas petition, and his appeal to the
Supreme Court of Appeals from the denial of that petition.

7.     The Petitioner's actual innocence, and his effective life sentence, entitle him
to special consideration with respect to the State's violations of his
constitutional rights.

(Id., pp. 384-85.) On the same day, Petitioner, by Mr. Gillooly, filed a Motion for Appointment of

Counsel. (Id., p. 396.) On July 14, 2010, the Circuit Court granted Petitioner's Motion and appointed

Mr. Gillooly as counsel. (Id., pp. 357-58.) On July 27, 2010, the Circuit Court granted Petitioner's

request for discovery. (Id., pp. 396.) On August 26, 2010, the State filed its Answer to Petitioner's

*habeas* Petition. (Id., pp. 350-56.) A Special Prosecutor was appointed on February 23, 2011.

(Document No. 84-1, pp. 348-49.) On May 9, 2011, Petitioner deposed former assistant prosecuting

attorney, Deborah Garton. On June 24, 2011, Petitioner deposed Sgt. Melissa Clemons of the West

Virginia State Police. An omnibus hearing was conducted on November 4, 2011. (Id., p. 398.)

During the omnibus hearing, the Circuit Court heard testimony from Petitioner's trial counsel, Susan

Henderson and Thomas L. Fuda. (Id.) The parties agreed to submit the deposition testimonies of

Deborah Garton and Sgt. Melissa Clemons without calling them as witnesses. (Id.) Also on

November 4, 2011, Petitioner filed his "Losh List" raising the following grounds of error:

1.    Statute under which conviction obtained is unconstitutional(Losh #2);
2.    Suppression of helpful evidence by prosecutor(Losh #16);
3.    Ineffective assistance of counsel (Losh #21);
4.    Refusal of continuance (Losh #33);
5.    Claims concerning use of informers to convict (Losh #40);
6.    Constitutional errors in evidentiary rulings (Losh #41);
7.    Instructions to the jury (Losh #42);
8.    Claims of prejudicial by prosecutor (Losh #44);
9.    Sufficiency of evidence (Losh #45);
10.   Severer sentence than expected (Losh #50); and
11.   Excessive sentence (Losh #51).

(Id., pp. 320-23.) By Order filed on November 23, 2011, the Circuit Court permitted Petitioner to

9

submit the deposition testimony of his expert witness, Bobby Miller, M.D. (Id., p. 398.) After addressing the merits of above claims, the Circuit Court denied Petitioner's *habeas* Petition by Order entered April 26, 2012. (Document No. 88, pp. 231-300.)

On May 29, 2012, Petitioner, by counsel, Thomas Gillooly, filed his Motion for an Extension of Time to File Notice of Appeal, which the West Virginia Supreme Court of Appeals granted. (Document No. 84-5, pp. 17 - 20.) On June 29, 2012, Petitioner filed his Petition for Appeal from the Circuit Court's decision, raising the following grounds:

1.      The Circuit Court ignored the plain language of Syllabus Point 2 of State v. Oskalumi, by erroneously absolving the State of its obligation to produce to the defense allegedly incriminating letters, in the possession of the Regional Jail Authority and allegedly written by White; and by erroneously concluding that defense counsel was not ineffective, despite failing to assert Osakalumi to prevent the introduction of highly incriminating hearsay testimony of the letters' contents from jailhouse witnesses.

2.      The Circuit Court erred by failing to conclude that defendant's trial counsel were constitutionally ineffective in failing to object to a play therapist's opinion that White was guilty, and that the alleged victims were creditable; and in failing to challenge the lack of a proper foundation for the witness's hearsay testimony, presented as an expert's opinion.

(Id., p. 42 - 56.); White v. State of West Virginia, Case No. 12-0795 (W.Va. June 24, 2013). By Memorandum Decision entered on June 24, 2013, the West Virginia Supreme Court of Appeals affirmed the decision of the Circuit Court. (Document No. 84-5, p. 147-50.)

On August 21, 2013, Petitioner, by counsel, Thomas Gillooly, filed with this Court his "Notice that Petitioner's State Habeas Corpus Proceedings Have Concluded." (Document No. 68.) By Order entered on August 23, 2013, the undersigned reinstated the instant case to the active docket and directed Respondent to file an Answer to the allegations contained in Petitioner's Amended Petition. (Document No. 69.) On September 9, 2013, Petitioner filed his "Unopposed

Motion for Leave to Further Amend Petition, and Motion for Amended Schedule." (Document No. 71.) By Order entered on September 10, 2013, the undersigned granted Petitioner's Motion. (Document No. 72.)

On September 20, 2013, Petitioner, by counsel, Thomas Gillooly, filed his Second Amended Petition. (Document No. 76.) In his Second Amended Petition, Petitioner sets forth a section describing "The Prejudicial Hearsay Testimony of Phyllis Hasty," "The Indictment and the Prosecution's Opening Statement," "Phyllis Hasty's Testimony Interpreting the Children's Alleged Statements for the Jury and Vouching for the Children's Credibility, and for the Truth of the Accusations," and "The Admission of Evidence of Letters Allegedly Written by the Petitioner." (Id., pp. 3 - 26.) Petitioner then asserted the following grounds for relief:

76.    The allegations set forth above regarding the Petitioner's Indictment and the opening statement of the prosecution establish the denial of the Petitioner's Sixth Amendment right to effective assistance of counsel, and the denial of his right to Due Process.

77.    The allegations set forth above regarding the testimony of the witness Hasty, including her hearsay accounts of the alleged child victims' statements, and her vouching for their credibility and offering her opinion on the truth of the accusations (and therefore of Petitioner's guilt) establish the denial of the Petitioner's Sixth Amendment right to effective assistance of counsel, and the denial of his right to Due Process.

78.    The allegations set forth above regarding the failure of defense counsel and the trial court to establish the admissibility of the testimony of the witness Hasty by subjecting her methodology to a gatekeeper test establish the denial of the Petitioner's Sixth Amendment right to the effective assistance of counsel, and the denial of his right to Due Process.

79.    The allegations set forth above regarding the hearsay testimony as to the content of letters allegedly written by Petitioner establish the denial of Petitioner's Sixth Amendment right to effective assistance of counsel, to the original evidence in the State's possession, and the denial of his right to Due Process.

80.     Under all of the facts and circumstances described above, Petitioner's conviction constitutes a fundamental miscarriage of justice, and therefore a denial of due process of law as guaranteed by the West Virginia and United States Constitution.

81.     The errors of state and federal law described above are so egregious and overwhelming in this case that they constitute a denial of due process of law as guaranteed by the West Virginia and United States Constitutions.

82.     Under the particular facts and circumstances of this case, the refusal of the State to permit Petitioner to confront his purported accusers, that is, his wife's children, or at least those of them who purportedly accused him, deprived Petitioner of his rights under the Sixth and Fourteenth Amendments of the United States Constitution, and Article III, § 14, of the West Virginia Constitution.[6]

* * *

84.     The representation provided by Petitioner's court-appointed counsel at trial and on direct appeal constituted ineffective assistance of counsel, in violation of the Sixth and Fourteenth Amendments of the United States Constitution.

85.     The Petitioner's sentence, under all the facts and circumstances of the case, is so disproportionate to the offenses involved that it violates the cruel and unusual prohibition of the Eighth Amendment to the United States Constitution, and Article III, § 5, of the West Virginia Constitution.

86.     The Petitioner's actual innocence, and his effective life sentence, entitle him to special consideration with respect to the State's violations of his constitution rights.

(Id., pp. 26 - 28.)

On October 18, 2013, Respondent filed its Answer, Motion for Summary Judgment, and

Memorandum in Support. (Document Nos. 81 - 83.) Specifically, Respondent argues as follows: (1)

Petitioner fails to prove that the State Court's rejection of his ineffective assistance of counsel claims

was "contrary to, or an unreasonable application of, clearly establish Federal law" (Document No.

83, pp. 8 - 9.); (2) "The Supreme Court of Appeals of West Virginia has disposed of Petitioner's

---

[6] Paragraph 83 asserts the exact same claim as Paragraph 82.

ineffectiveness claims that rest on state law grounds, and those state law rules are immune from federal *habeas* review (Id., pp. 9 - 12.); (3) "There was nothing objectionable about the Prosecutor's statements" (Id., pp. 12 - 13.); (4) Petitioner's ineffective assistance of counsel claim based upon the alleged failure to object to Phyllis Hasty's testimony is without merit (Id., pp. 12 - 14.); (5) Petitioner's ineffective assistance of counsel claim based upon the alleged failure to object to the missing letter is without merit (Id., pp. 14 - 16.); (6) Petitioner's Confrontation Clause claim lacks merit (Id., 16 - 17.); and (7) Petitioner's excessive sentence claim lacks merit (Id., pp. 17 - 18.)

On January 6, 2014, Petitioner filed his Response in Opposition. (Document No. 91.) First, Petitioner argues that the Court is not "precluded by the doctrine described in this pleading as the 'independent and adequate state procedural grounds doctrine, from reaching the federal constitutional issues that [Petitioner] raised in state court." (Id., pp. 2 - 3.) Petitioner contends that Respondent's argument "purportedly based on the 'adequate and independent state procedural grounds' doctrine betrays a fundamental misunderstanding of the law." (Id., pp. 5 - 6.) Second, Petitioner "acknowledges that reference to the West Virginia Constitution were inadvertently included in the Second Amended Petition" in paragraphs 80 - 82, and 85. (Id., p. 2, fn. 1.) Third, Petitioner states that "the West Virginia State Courts did not reject [his] now-exhausted federal constitutional claims on the basis of any procedural default." (Id., pp. 7 - 9.). Finally, Petitioner argues that the State Court's decisions are not entitled to deference and Petitioner is entitled to *de novo* review because the State Courts did not reach the merits of Petitioner's federal claims. (Id., pp. 9 - 11.)

## **FACTUAL BACKGROUND**

Petitioner was charged with sexually abusing his step children, D.H., St.H, Sh.H., and M.H.

13

At the time of the alleged sexual abuse, the ages of the children ranged from two years old to eight years old. Jennifer White, the mother of the children, began residing with Petitioner in July, 1999 and the couple was married in August, 1999. For reasons unrelated to this case, the West Virginia Department of Health and Human Resources ["DHHR"] removed the children from the household of Petitioner and Mrs. White in November, 1999. In August 2000, Jennifer White's parental rights were terminated. The child victims disclosed the alleged abuse by Petitioner in September, 2000, following their placement in foster care.

## THE APPLICABLE STANDARDS

Federal *habeas* relief is available to a State prisoner under 28 U.S.C. § 2254, only if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)(2002); See also Sargent v. Waters, 71 F.3d 158, 160 (4th Cir. 1995). Section 2254(d) provides that when the issues raised in a Section 2254 Petition were raised and considered on the merits in State Court *habeas* proceedings, federal *habeas* relief is unavailable unless the State Court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal *habeas* Court may grant *habeas* relief "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at1523. A federal

14

*habeas* Court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State Court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. Id. When a petitioner challenges the factual determination made by the State Court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the fact.'" 28 U.S.C. § 2254(d)(2). In reviewing a State Court's ruling on post-conviction relief, "we are mindful that 'a determination on a factual issue made by the State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003); also see 28 U.S.C. § 2254(e).[7] On this framework, consideration should be given to

---

[7] Title 28, U.S.C. Section 2254(e) provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –

  (A) the claim relies on –

    (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

  (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

15

Respondent's Motion for Summary Judgment.

**Motion for Summary Judgment:**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Petitioner's claims, summary judgment is appropriate.

**DISCUSSION**

1.      **Ineffective Assistance of Counsel:**

The standard established by the United States Supreme Court in determining whether or not a defendant was denied his Sixth Amendment right to effective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ineffective

16

assistance of counsel claims consist of mixed questions of fact and law. Id. Under the two-pronged standard, a Petitioner must show (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) that counsel's deficiency resulted in prejudice so as to render the results of the trial unreliable. Id. at 687-91, 104 S.Ct. at 2064-66. Counsel's performance is entitled to a presumption of reasonableness and judicial review of counsel's strategic decisions is highly deferential. Id. at 689, 104 S.Ct. at 2065. Thus, a petitioner challenging his conviction on the grounds of ineffective assistance must overcome a strong presumption that the challenged actions constituted sound trial strategies. Id. The Court in Strickland cautioned against the ease in second-guessing counsel's unsuccessful assistance after the adverse conviction and sentence are entered. Id. The Fourth Circuit Court of Appeals specifically recognized that ineffective assistance of counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert. denied, 506 U.S. 1087 (1993). Applying this standard, and based upon all of the evidence of record, the Court will address the merits of each of Petitioner's allegations of ineffective assistance of counsel as set forth above.

### A.     *Trial Counsel was Not Ineffective Regarding Testimony of Phyllis Hasty.*

In his Petition, Petitioner argues that trial counsel was ineffective in failing to object to Phyllis Hasty's testimony. Specifically, Petitioner complains that Ms. Hasty gave "hearsay accounts of the alleged child victims' statements," vouched for the alleged victims' credibility, and "offered her opinion on the truth of the accusations." (Document No. 76, p. 26.) Petitioner explains that trial counsel failed to "establish admissibility of the testimony of the witness Hasty by subjecting her methodology to a gatekeeper test." (Id., p. 27.) Citing State v. Pettrie, 209 W.Va. 449, 549 S.E.2d

323 (2001), quoting Syllabus Point 5, State v. Edward Charles L., 183 W.Va. 641, 398 S.E.2d 123(1990), Petitioner states that "Hasty's pre-trial hearing testimony failed to establish that the motive of the children with whom she conducted play therapy was 'consistent with the purposes of promoting testimony,' or that their statements were 'such as [are] reasonably relied upon by a physician [therapist] in treatment or diagnoses." (Id., p. 5.) Petitioner, therefore, argues "the statements were . . . not admissible under a firmly rooted hearsay exception." (Id., p. 7.) Finally, Petitioner argues that trial counsel testified during the omnibus hearing that "they had no strategic or tactical reason for failing to raise the rule established by the West Virginia Supreme Court in Syllabus Point 7 of State v. Edward Charles L., 183 W.Va. 641, 398 S.E.2d 123 (1990) that an expert on child sexual abuse 'may not give an opinion as to whether he personally believes the child . . . as [this] would improperly and prejudicially invade the province of the jury.'" (Id., pp. 8 - 9.)

In his Motion for Summary Judgment, Respondent first argues that Petitioner claim must be dismissed because "each of Petitioner's claims was disposed of by the state *habeas* court on state law grounds." (Document No. 83, pp. 12 - 13.) Second, Respondent states that "[w]ith regard to Petitioner's claim that there was no foundation for Phyllis Hasty's testimony, that claim lacks merit because trial counsel did in fact object to Hasty's testimony." (Id., p. 13.) Third, Respondent argues that the State *habeas* court properly found "that a proper foundation was laid for Hasty's testimony and that there was therefore no ineffectiveness." (Id., pp. 13 - 14.) Fourth, Respondent argues that the State *habeas* court's decision that Ms. Hasty testified as to the credibility of the children was not unreasonable. (Id., p. 14.)

In Response, Petitioner argues that his above claim does allege a violation of his federal constitutional right to effective assistance of counsel. (Document No. 10.) Specifically, Petitioner

18

argues that "[a] *habeas* petitioner in state court can hardly be expected to raise no state grounds for relief." (Id., p. 12.) Petitioner further argues that "the state courts did not reach [Petitioner's] federal claims." (Id.)

### *(I)*     *Hearsay and Lack of Foundation:*

Regarding Petitioner's above *habeas* claim, the Circuit Court found as follows:

> Another sub-ground for ineffective assistance of trial counsel concerns itself with the Petitioner's contention that his trial counsel failed to object to the testimony of Phyllis Hasty where no foundation had been laid allowing for such testimony. The Petitioner argues that not only his counsel, but also the trial court itself failed to honor its gatekeeper role in ensuring that testimony given under the medical diagnosis or treatment provision was not given proper effect. In other words, the Petitioner argues that Phyllis Hasty was able to testify about the children's statement made to her during their play therapy sessions with her, without having set the proper foundation as to whether the children knew why they were seeing Ms. Hasty in the first place.

> After a review of the transcripts in the underlying criminal proceeding, as well as the testimony given during the omnibus hearing, this Court does not find that the Petitioner's counsel were ineffective on this sub-ground. The Petitioner provides the excerpt of the transcript containing the dialogue between his then co-Defendant's counsel, the witness Ms. Hasty, and the trial court wherein the co-Defendant's counsel attempted to object to Ms. Hasty's testimony as being without the proper foundation. The trial court was not persuaded by the co-Defendant's counsel's argument. The Petitioner has based his argument against the improper foundation for Ms. Hasty's testimony on foreign case law mentioned in Justice Starcher's concurring opinion in *State v. Pettrey*, 209 W.Va. 449 (2001). However, as stated by the trial court at the time of the Petitioner's suppression hearing, the West Virginia Supreme Court of Appeals had already recognized Ms. Hasty's play therapy, and the statements given to her by her children patients during those therapy sessions, as admissible evidence in sexual abuse cases.

> The Petitioner's argument lacks merit; the trial record showed that the two older children were taken to Phyllis Hasty for therapy purposes by the foster parents. The children were acting out in inappropriate ways that alarmed the parents who sought help from the play therapist. Further, in spite of Professor Cleckley's Handbook, the Supreme Court of Appeals already addressed this issue in *Pettrey*, wherein play therapy was given the recognition as a medical diagnosis and treatment, and further recognized such therapists as "experts" and therefore as such, are within the hearsay exception.

> At pretrial hearings the State demonstrated that the victims were frightened of the Petitioner. Additionally, the Petitioner recognized that Mr. George Sitler, Esq.,

the public defender who represented the Petitioner's then wife, Jennifer White, "demonstrated that he understood the hearsay exception supporting Rule 803(4) 'Statements for purposes of medical diagnosis or treatment'" however, the trial court had overruled the objection. Therefore, it begs the question, had it not been for trial counsel's errors, would the result have been different? This Court **FINDS** that it would not. Accordingly, the Court **FINDS and CONCLUDES** that the Petitioner has failed to prove his sub-claim of ineffective assistance of counsel by preponderance of the evidence.

(Document No. 88, pp. 284-85.)

The West Virginia Supreme Court found as follows: "As set forth by the circuit court, the trial record showed that the two older children were taken to Ms. Hasty for therapy purposes by the foster parents when the children were acting out in inappropriate ways. Arguments were presented by the defense in support of suppressing Ms. Hasty's testimony, but the trial court denied the same." (Document No. 84-5, pp.147-50.) The West Virginia Supreme Court then adopted and incorporated the "Circuit Court's well-reasoned finding and conclusions as to the assignment of error raised in this appeal" and affirmed the decision of the Circuit Court. (Id.)

To the extent Respondent argues that Petitioner's above claim should be dismissed because Petitioner is alleging a violation of State law, the undersigned finds that Respondent's argument is without merit. Petitioner's Petition clearly indicates that Petitioner is alleging a violation of his federal constitutional right to effective assistance of counsel. Thus, the undersigned will consider whether the State *habeas* court's determination was contrary to a reasonable application of federal law, or based on an unreasonable determination of facts. First, the State *habeas* court properly applied the standards set forth in Strickland in its determination that counsel was not ineffective. Second, the Court finds that Petitioner has failed to provide any evidence rebutting the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct. A review of the record confirms that while Petitioner and co-defendant's cases were still consolidated, co-

20

defendant's counsel objected to Ms. Hasty's testimony during a suppression hearing conducted on August 1, 2001.[8] (Document No. 61-1.) Specifically, co-defendant's counsel objected to Ms. Hasty's testimony arguing that there was a lack of foundation and her testimony constituted hearsay. (Id., pp. 32 - 46.) The record reveals that Ms. Hasty was thoroughly questioned concerning the methods she used to treat the alleged victims. (Id.) The trial court subsequently denied the Motion to Suppress the testimony of Ms. Hasty. Thus, trial counsel was not unreasonable in failing to assert the same argument that was asserted by co-defendant's counsel. Additionally, there is no indication that Petitioner was prejudiced by the foregoing. Specifically, there is no indication that but for trial counsels' failure to challenge Ms. Hasty's testimony, Ms. Hasty's testimony would have been excluded. Based on the foregoing, the undersigned finds that Petitioner's above claim is without merit because there is no evidence that the State *habeas* court's determination was contrary to a reasonable application of federal law, or based on an unreasonable determination of facts.

### (ii)    *Credibility:*

Regarding Petitioner's above *habeas* claim, the Circuit Court found as follows:

> The Petitioner has painstakingly outlined the comparisons between the trial testimonies given by Phyllis Hasty in his trial and in the trial concerning Charles Akers. The Court has reviewed same thoroughly and simply cannot agree with the Petitioner's argument that Ms. Hasty testified as to the credibility of the children. There is a major difference between Ms. Hasty's trial testimony in the Petitioner's case and in the other criminal matter. Further, during the omnibus hearing, even though neither trial counsel objected to the testimony as cited by the Petitioner in his claim that she had vouched for the children's credibility, the Petitioner's counsel were well aware of what Ms. Hasty's testimony would be. In other words, they were not surprised by her testimony and were amply prepared to cross examine her because everyone knew what she was going to say during trial.
> This Court has review the trial testimony at length and cannot agree with the

---

[8]  Petitioner and his trial counsel were present during the suppression hearing. (Document No. 61-1.)

Petitioner that Ms. Hasty was permitted to testify to the "ultimate issue" without objection. This Court **FINDS** that Ms. Hasty only testified as to what the children disclosed to her during their therapy session, testimonial evidence that has long been recognized as admissible evidence pursuant to *Pettry*. Accordingly, the Court **FINDS and CONCLUDES** that the Petitioner has failed to prove this sub-claim of ineffective assistance of counsel by a preponderance of the evidence.

(Document No. 88, pp. 285-86.)

The West Virginia Supreme Court adopted and incorporated the "Circuit Court's well-reasoned finding and conclusions as to the assignment of error raised in this appeal" and affirmed the decision of the Circuit Court. (Document No. 84-5, pp.147-50.)

The undersigned finds that Petitioner has failed to provide any evidence rebutting the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct. First, the State *habeas* court properly applied the standards set forth in Strickland in its determination that counsel was not ineffective. Second, the Court notes that the State *habeas* court determined that Ms. Hasty did not testify as to the credibility of the children and therefore, trial counsel were not ineffective in failing to object. As stated above, a determination on a factual issue made by the State court is presumed correct and the burden is on the petitioner to rebut this presumption "by clear and convincing evidence." Tucker, 350 F.3d at 439. In the instant case, Petitioner merely concludes that Ms. Hasty testified to the credibility of the children and trial counsel acted ineffectively in their failure to object pursuant to State v. Edward Charles L., 183 W.Va. 641, 398 S.E.2d 123 (1990). Petitioner, however, fails to present "clear and convincing evidence" rebutting the State *habeas* court's finding that Ms. Hasty did not testify as to the credibility of the alleged child victims.[9] The

---

[9] The prosecutor questioned Ms. Hasty concerning the number of children she had treated and the process she used when counseling a child. (Document No. 84-2, pp. 268-69.) Specifically, the prosecutor questioned Ms. Hasty as follows:

undersigned finds that Petitioner's above claim is without merit because there is no evidence that

the State *habeas* court's determination was contrary to a reasonable application of federal law, or

based on an unreasonable determination of facts.

---

> Q.    Okay. There are, and I anticipate the defense witness whose name escap – Doctor whatever, testifying that when these children were evaluated for sexual abuse that you - - too many pe - - too many fingers in the pie taint the process, and I mean I know we've seen these horror stories all the time about where people coach children into saying things . . . - - when you are interviewing these children, number one, are you on alert for things that don't ring true?
>
> A.    Certainly I would be, there's a whole list of things you look for. You look for whether the words fit the affect, whether the mood of the child, whether the child speaks in - - in child words or whether she says the same thing and can't give details, behaviors that are reported at home, usually if a child's been abused, they're having problems at school, they're having problems with peers, they may be having nightmares, all those factors play into it.
>
> Q.    Why would the child make something like this up and tell you such a story?
>
> A.    The only times I've really experienced that has been - - the only times I can recall have been custody battles where one parent is trying to get custody of one of the children and the other parent is being accused of abuse and trying to be denied access to the children.
>
> Q.    During your involvement with [D.H.] and [St.H.] and for a little bit [Sh.H.], did - - did you ever come across anything - - well first of all did you ever come across anything that just didn't ring true to you?
>
> A.    No.
>
> Q.    Okay, did you ever come across anything that might conceivably be like a motive why they would make something up like that?
>
> A.    No.

(*Id.*, pp. 269-70.) Thus, Ms. Hasty testified that during the counseling session, she found no indication that the children had been coached or had motive to "make something up." Ms. Hasty did not testify that she believed the statements made by the children were true.

23

B.      *Trial Counsel was Not Ineffective Regarding the Prosecutor's Opening Statement.*

In his Petition, Petitioner argues that trial counsel was ineffective in failing to object the prosecutor's opening statement. (Document No. 76, p. 26.) After quoting a pertinent section of the prosecutor's opening statement, Petitioner argues that trial counsel allowed the prosecutor to give "what amounts to unsworn testimony to purported facts, using a royal 'we' of unknown meaning, but which apparently encompassed the Grand Jury, the Prosecuting Attorney's staff, the therapist, probably law enforcement officials, and perhaps others." (Id., pp. 16 - 18.) Petitioner further complains that the prosecutor's "opening statement scarcely mentions a witness who is expected to testify to a fact, and when a witness (for example, Ms. Hasty) is mentioned, it is a mere mention barely connected, if at all, to anticipated evidence." (Id.) Petitioner, therefore, contends that trial counsel was ineffective in failing to object to the prosecutor's opening statement. (Id.)

In his Motion for Summary Judgment, Respondent first argues that Petitioner's above claim must be dismissed because the State *habeas* court disposed of Petitioner's above claim "that rest[ed] on State law grounds, and those State law rulings are immune from federal habeas review." (Document No. 83, pp. 9 - 11.) Next, Respondent argues that "the Supreme Court of Appeals ruled that the prosecutor's opening statements were not improper under West Virginia law" and "Petitioner cannot show that this ruling was contrary to, or an unreasonable application of, clearly established Federal law." (Id., p. 11.) Specifically, Petitioner states "there was nothing objectionable about the prosecutor's statements." (Id., pp. 11 - 12.) Respondent claims that "Petitioner has not identified how any aspect of the State's opening statements was improper." (Id., p. 11.) Respondent explains that the "State was faced with explaining to the jury how it had developed a complex indictment and calculated the number of child abuse charges against Petitioner." (Id., p. 12.)

24

Respondent contends that the "State's explanation was intended simply to assist the jury in understanding how the charges were identified." (Id.) Thus, Respondent argues trial counsel was not ineffective because "there was nothing improper about the State's opening statements." (Id.)

In Response, Petitioner argues that his above claim does allege a violation of his federal constitutional right to effective assistance of counsel. (Document No. 10.) Specifically, Petitioner argues that "[a] *habeas* petitioner in state court can hardly be expected to raise no state grounds for relief." (Id., p. 12.) Petitioner further argues that "the state courts did not reach [Petitioner's] federal claims." (Id.)

Regarding Petitioner's above *habeas* claim, the Circuit Court found as follows:

The State began its opening statements with an overview of the multiple-count indictment. Although the parties had discussed the use of the chart the State intended to use as a demonstrative aid to help the jury understand the indictment, the State was able to do so with the blessing of Petitioner's defense team. Of importance here, the State's own chart assisted the Petitioner in his motions to have several counts of the indictment dismissed prior to trial. Further, although the Petitioner's trial counsel did not object during the State's opening statements, the record does not indicate that Petitioner suffered any additional prejudice by the assistant prosecuting attorney's explanation of the complex indictment. Accordingly, the Court **FINDS and CONCLUDES** that the Petitioner has failed to prove this sub-claim of ineffective assistance of counsel by a preponderance of the evidence.

(Document No. 88, pp. 287-88.) The West Virginia Supreme Court adopted and incorporated the "Circuit Court's well-reasoned finding and conclusions as to the assignment of error raised in this appeal" and affirmed the decision of the Circuit Court. (Document No. 84-5, pp.147-50.)

To the extent Respondent argues that Petitioner's above claim should be dismissed because Petitioner is alleging a violation of State law, the undersigned finds that Respondent's argument is without merit. Petitioner's Petition clearly indicates that Petitioner is alleging a violation of his federal constitutional right to effective assistance of counsel. Thus, the undersigned will consider

whether State *habeas* court's determination was contrary to a reasonable application of federal law, or based on an unreasonable determination of facts. First, the State *habeas* court properly applied the standard set forth in <u>Strickland</u> in its determination that counsel was not ineffective. Second, the Court finds that Petitioner has failed to provide any evidence rebutting the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct. The State *habeas* court found that "[a]lthough Petitioner's trial counsel did not object during the State's opening statements, the record does not indicate that Petitioner suffered any additional prejudice by the assistant prosecuting attorney's explanation of the complex indictment." Petitioner complains that trial counsel should have objected to the prosecutor's use of "we" during opening statements. A review of the record reveals that the prosecutor used "we" during certain portions of her opening statement. Specifically, the prosecutor stated, in pertinent part, as follows:

* * *

These counts, and *we'll* go through them so that you will understand how *we* arrived at this. These children can't give us dates, they couldn't tell us dates, what they say is it happened a lot, or it happened all the time, or lots, or - - so what *we* did, basically, is charge one - one count of whatever *we're* charging here a month, once a month. Obviously, and I think the therapist will say that the way the children talked about it, and talked about it happened more than once a month but *we* charged once a month just to be on the safe side, *we're* not gonna say, okay lets guess it happened fifty-two times a month, I mean *we're* not gonna do that so we say once a month.

Okay, now here's [D.H.]. [D.H.] has the most counts, quite frankly, because she's the most vocal. She's the oldest, she's able to talk and tell you more so *we* learn more from [D.H.], and because of that *we* learn more about what happened to her and she can verbalize. [M.H.], *we* know what happened to him because of what [D.H.] and [St.H.] tell us, not because [M.H.] was able to tell us anything, so [D.H.'s] the 1, and [St.H.], will tell you what happened to [M.H.] but if you look here Count I is sexual assault in the first degree, intercourse, vaginal, and that is June 1999, and you will see this down here, as I've got, it is repeated July, August, September, October, November, once a month. That means you'll see five corresponding counts here, every month you'll see the sexual assault first degree, vaginal. Now I didn't write 'em all out here I just - - I just gave you the first month and I'm just telling you it's repeated.

* * *

26

All right *we* go then - - and here I told you Counts 13 through 60 are corresponding, there are 60 counts - - well there wouldn't be now because *we've* taken some out - - there will be 55 counts involving [D.H.] once a month, each of these offenses, five months, *we* come up with 55 counts.

\* \* \*

Now [Sh.H.], again, had oral sex with the Defendant, and there's four counts for each of the later children because this is basically, all *we* could get from them. [Sh.H.] has the four counts, one oral sex involving the Defendant, the other three are the sexual exploitation in which she had sex with her siblings, and the same with [M.H.], four counts. So altogether you're going to have 105 counts, *we've* been talking about a 110 but you're gonna have a 105. So that's what happened with these children.

\* \* \*

. . . *We* are prepared to address their experts, but that'll come down the line so what I'm saying is don't make up your mind, don't make up your mind with my expert, don't make up your mind with my expert, but when it comes down for them to put on their expert don't make up your mind with them. Not until this trial is over will you decide who you believe, now was that expert right in saying, oh my I don't think these interviews were very good, I don't think those were very good at all, you might find that right, you may say Phyllis Hasty you have no business bein' a play therapist in my humble opinion and you may disregard her testimony, but wait until all the evidence is in and then decide who you are going to believe.

\* \* \*

. . . So just listen carefully, you don't have to accept the experts but you have to be ready to listen to them and weight their evidence, you have to weigh it, and it's not all the same weight, you may give more weight to one witness than you do another, that's how you do this. Just remember there's gonna be four people that don't get a chance to testify in front of you but *we* know what they're gonna say, *we* know what they've been saying all along, and just as [D.H.] was believed when she pointed to her father there's no reason to disbelieve her now.

(Document No. 84-2, pp. 205-09)(emphasis added).

The undersigned has thoroughly reviewed the record and cannot find that the State *habeas* court's determination that Petitioner was not prejudiced by the prosecutor's opening statement was contrary to a reasonable application of federal law, or based on an unreasonable determination of facts. During opening statements, the prosecutor merely described the indictment and the calculation of the number of the sexual abuse charges. Additionally, the trial court instructed the jury that "the

27

opening statement is an opportunity the lawyers are given to appear before you before any evidence is presented to, basically, aid you in receiving the evidence." (Document No. 84-2, p. 199.) The record reveals that the trial court further instructed the jury that the comments of the lawyers were not evidence and were not to be considered as matters of fact, and jurors are presumed to follow the court's instructions. (Id., pp. 199-200.) The record contains no indication that Petitioner was prejudiced by trial counsel's failure to object to the prosecutor's opening statement. Accordingly, the undersigned finds that Petitioner's above claims is without merit.

### C.   *Trial Counsel was Not Ineffective Regarding the Letters.*

In his Petition, Petitioner argues that the "hearsay testimony as to the content of the letters allegedly written by Petitioner establish the denial of the Petitioner's Sixth Amendment right to the effective assistance of counsel." (Document No. 76, p. 27.) Petitioner explains that "[s]horly before trial, the prosecution disclosed to the defense for the first time that the State possessed information regarding allegedly incriminating letters written by the Petitioner." (Id., p. 20.) Petitioner states that during a pre-trial hearing conducted on November 29, 2001, "the State disclosed that it intended to call three inmates who were housed with Jennifer White at the facility where both she and the Petitioner were being held." (Id.) Petitioner complains that the prisoner witnesses testified to the content of letters allegedly written by Petitioner to Jennifer White, wherein Petitioner allegedly admitted to some of the conduct charged in the indictment. (Id.) Petitioner alleges that the State was aware of the witnesses in the summer of 2001, but did not disclose the witnesses until November, 2001. (Id., p. 21.) Petitioner complains that trial counsel only objected based upon spousal privilege and hearsay. (Id., p. 22.) Citing State v. Osakalumi, 194 W.Va. 758, 461 S.E.2d 504 (1995), Petitioner contends that trial counsel "never called for, and the court never conducted, the six part,

analysis required in West Virginia when the State fails in a criminal prosecution to produce to the defense evidence which is or was in its possession. (Id., pp. 22 - 23.)

In his Motion for Summary Judgment, Respondent first argues that Petitioner above claim must be dismissed because the State *habeas* court disposed of Petitioner's above claim "that rest[ed] on State law grounds, and those State law ruling are immune from federal habeas review." (Document No. 83, pp. 9 - 11.) Next, Respondent argues that trial counsel was not ineffective in failing to object based upon Osakalumi because "there was no *Osakalumi* violation." (Id., pp. 14 - 15.) Respondent further notes that trail counsel did object to the letters based upon hearsay. (Id., p. 15.) Finally, Respondent contends that the State *habeas* court properly "ruled that the letters were not inadmissible hearsay." (Id.)

In Response, Petitioner argues that his above claim does allege a violation of the federal constitutional right to effective assistance of counsel. (Document No. 91, p. 10.) Specifically, Petitioner argues that he "explicitly based his *Osakalumi*-related claim on the federal constitution." (Id., p. 7.) Petitioner explains that "*Osakalumi* itself recognizes that West Virginia's jurisprudence on the suppression of evidence derives directly from federal constitutional jurisprudence." (Id.) Petitioner contends that the State *habeas* court's decisions "do not address [Petitioner's] federal constitutional claims." (Id.) Petitioner further complains that trial counsel "never raised the State's failure to provide any explanation of what happened to the letters [Petitioner] allegedly wrote, to whose purported content the jailhouse witnesses were then permitted to testify." (Id., p. 8.) Petitioner asserts that the "State's bad faith . . . was not fully developed at trial because his trial counsel never raised an *Osakalumi* issue, or a more explicit federal bad-faith issue, regarding the lost evidence." (Id.)

29

Regarding Petitioner's above *habeas* claim, the Circuit Court found as follows:

The Petitioner claims that his trial counsel were ineffective for failing to raise an objection based on *State v. Osakalumi* where the State failed to produce and disclose to the Petitioner's defense team the actual letters he allegedly wrote to his then wife, Jennifer White, while they were both incarcerated at Southern Regional Jail. The Petitioner argues that his trial counsel raised objection based on hearsay and the marital privilege, however, they failed to raise a stronger objection where the State had a duty to disclose to the Petitioner the actual letters.

The Court reviewed at length the *Osakalumi* case and its application in the Petitioner's case, and opines that its application is questionable: That case dealt with exculpatory evidence – and the State's duty to preserve such evidence for examination by a defendant when same was necessary in prosecuting a defendant. The purported trajectory of the bullet through the couch was crucial to the State's expert's (Dr. Irvin Sopher) determination that the manner of death of the victim was homicide, not suicide (the defendant therein had argued that the victim killed himself by playing Russian Roulette, and he and his companions panicked and dumped the body in the woods). The couch was never preserved by the State, although it had several opportunities to preserve it and for reasons unknown, never took decent photographs of the couch when law enforcement first examined it, and further, law enforcement never recorded the dimensions of the couch). The couch began to smell terribly, so law enforcement, with the Mercer County Prosecutor's blessing, disposed of it.

In this case, the Petitioner complains that his due process rights were violated when the State failed to preserve the incriminating letters he wrote to his then wife while the both of them were incarcerated. *Osakalumi* held that the negligent failure of the police to preserve the couch in which the fatal bullet was lodged and the police's failure to photograph the couch properly before its destruction prevented the defendant therein from fully and fairly examining expert testimony regarding the trajectory of the bullet, and, thus, the defendant was denied a fair trial.

In *State v. Hatfield*, 169 W.Va. 191 (1982), the West Virginia Supreme Court of Appeals recognized that due process requires prosecutors to reveal to a criminal defendant all potentially exculpatory evidence in accordance with the State Constitution. *Osakalumi* examined the process a trial court must follow when the situation arises where the State "had or should have had evidence requested by a criminal defendant but the evidence no longer exists when the defendant seeks its production, a trial court must determine (1) whether the requested material, if in the possession of the State at the time of the defendant's request for it, would have been subject to disclosure under either West Virginia Rule of Criminal Procedure 16 or case law; (2) whether the State had a duty to preserve the material; and (3) if the State did have a duty to preserve the material, whether the duty was breached and what consequences should flow from the breach." *Id.* at 766.

The Court **FINDS** that *Osakalumi* does not apply in this matter for several reasons: first, the evidence destroyed was not exculpatory evidence. The letters

written by the Petitioner to his then wife were found to be exceptions to the hearsay exception because they contained admissions to the crimes for which the Petitioner had been prosecuted. Further, the evidence in *Osakalumi* was part of an ongoing police investigation which ultimately became an important aspect of the defendant's criminal trial. In the Petitioner's criminal trial, the letters were not part of the criminal investigation and no law enforcement officer had knowledge of the letters. The Mercer County Prosecutor's office had no knowledge of the letters until after the investigating officer had taken statements from the Petitioner's wife cell mates. The record shows that the Prosecutor's office was not informed of the existence of the letters from the cell-mates' correspondence; there was simply <u>no mention of these letters within the letters</u> to the Prosecuting Attorney. When Sgt. Clemons went to the regional jail to investigate about the letters, she was advised by regional jail authorities that the letters had been destroyed pursuant to jail policy of destroying contraband, which evidently, the inter-inmate letters were deemed to be.

 The Court will not go so far as to consider the authorities at the regional jail the "State" with regard to the State's duty to preserve evidence in a criminal investigation and subsequent proceedings. West Virginia Code § 31-20-27a provides that regional jail employees are not law enforcement officers. Pursuant to W. Va. Code § 31-20-1 et seq., it is clear that the Legislature intended for the Regional Jail and Correctional Facility Authority to be an entity separate and apart from the offices of prosecuting attorneys. Moreover, a thorough review of W. Va. Code § 31-20-5 includes the powers and duties of said authority, however, preserving evidence is not one of them. Interestingly enough, the authority's duties concerning monitoring of phone calls of inmates, where such phone calls are recorded, there is no requirement that said phone call recordings be turned over to law enforcement during investigations. As an extension of that, neither would confiscated letters, unless there was a proper court order requiring that the evidence shall be turned over to law enforcement. Based on the above, it is clear that the regional jail was never a party to the ongoing investigation concerning the Petitioner's sexual abuse charges, and accordingly, the regional jail had no duty to preserve evidence in the Petitioner's criminal proceeding. Presumably, the regional jail authorities had no idea of the importance of the letters when they were confiscated, if indeed they had been confiscated, as the record is unclear as to what exactly happened to the letters. Nevertheless, it is clear to the Court that the State, being the Office of the Mercer County Prosecuting Attorney as well as the West Virginia State Police or any other investigative arm of the Mercer County Prosecuting Attorney did not have possession of the letters.

 Accordingly, due to the irrelevance of *Osakalumi* to the loss of the letters evidence herein, the Court **FINDS** that the Petitioner's trial counsel were not ineffective due to their failure to raise this particular challenge to the loss of the evidence.

(Document No. 88, pp. 280-83.)

The West Virginia Supreme Court found as follows:

> The circuit court noted the distinction between the *Oaskalumi* matter involving exculpatory evidence and the present proceeding where petitioner's letters were clearly incriminating. The circuit court set forth additional reasons why the *Osakalumi* decision does not apply. Moreover, the subject of the letters was undoubtedly a statement against petitioner's interest. Petitioner has failed to meet his burden of establishing ineffective assistance of counsel under this standard.

(Document No. 84-5, p. 150.) The West Virginia Supreme Court then adopted and incorporated the "Circuit Court's well-reasoned finding and conclusions as to the assignment of error raised in this appeal" and affirmed the decision of the Circuit Court. (Id.)

To the extent Respondent argues that Petitioner's above claim should be dismissed because Petitioner is alleging a violation of State law, the undersigned finds that Respondent's argument is without merit. Petitioner's Petition clearly indicates that Petitioner is alleging a violation of his federal constitutional right to effective assistance of counsel. Thus, the undersigned will consider whether State *habeas* court's determination was contrary to a reasonable application of federal law, or based on an unreasonable determination of facts. First, the State *habeas* court properly applied the standards set forth in Strickland in its determination that counsel was not ineffective. Second, the Court finds that Petitioner has failed to provide any evidence rebutting the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct.

The record reveals that the State *habeas* court thoroughly considered and denied Petitioner's ineffective assistance of counsel claim based upon Osakalumi. First, the State *habeas* court determined that the application of Osakalumi was "questionable" because unlike Osakalumi, the letters in Petitioner's case were not exculpatory evidence. Next, the record contains no indication that the letters written by Petitioner to Mrs. White were ever in the possession of the State. Petitioner's claim that some of the letters were in the possession of the State because they were

confiscated by the jail officials is without merit.[10] There is no evidence that the Prosecutor's Office directed jail officials to confiscate the letters, that Prosecutor's Office was aware of the letters at the time the letters were confiscated, or that the Prosecutor's Office directed jail officials to destroy the letters. The record reveals that inmate-to-inmate letters are considered contraband, and it is the common practice for contraband to be destroyed by jail officials. The State *habeas* court determined that the West Virginia Legislature intended for the Regional Jail and Correctional Facility Authority to be an entity separate and apart from the offices of prosecuting attorneys and there is no authority requiring jail officials to preserve evidence.[11] Petitioner challenges the State *habeas* court's determination that jail officials who seized the letters were not "the State." Specifically, Petitioner concludes that the State *habeas* court's finding is "actually outrageous." Petitioner, however, fails to cite any authority supporting his claim that jail officials have a duty to review letters seized as contraband to determine whether the letters contain possible evidence, and if so, to preserve that evidence. Thus, there is no indication that the State *habeas* court's determination was contrary to a reasonable application of federal law, or based on an unreasonable determination of facts.

To the extent Petitioner claims that the State *habeas* court failed to address his federal claim based upon Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), his claim is without merit. Arizona is cited and discussed throughout the Osakalumi opinion, and the West Virginia Supreme Court determined that the holding in Arizona was too narrow because it restricts

---

[10]   The record reveals that Mrs. White had been caught in possession of letters from Petitioner by jail officials on three occasions. (Document No. 61-7, p. 105.)

[11]   The inmate witnesses testified that they read some letters received by Mrs. White from Petitioner. (Document No. 61-7, pp. 104-05.) Although the witnesses indicated that Mrs. White had been caught three times with letters from Petitioner, there is no indication that the three letters confiscated by the jail officials contained the allegedly incriminating statements.

a due process violation to only those cases where a defendant can show bad faith. State v. Osakalumi, 194 W.Va. 758, 461 S.E.2d 504 (1995). In Osakalmi, the West Virginia Supreme Court determined that the West Virginia Constitution required a higher standard of protection than those afforded by the federal constitution. Id., 194 W.Va. at 765-66, 461 S.E.2d at 511-12. Specifically, the West Virginia Supreme Court determined that the trial court should consider "the degree of negligence *or* bad faith." Id., 194 W.Va. at 765, 461 S.E.2d at 512(emphasis added). As stated above, the State *habeas* court thoroughly considered Osakalumi and determined that its application to Petitioner's case was questionable. Thus, it is clear that the State *habeas* court considered and rejected the application of Arizona.

Even assuming the State *habeas* court failed to consider whether Petitioner's federal constitutional right to due process as set forth in Arizona was violated, the undersigned finds such a claim is without merit. In Arizona, the United Supreme Court held that unless a criminal defendant can show bad faith by the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law under the Fourteenth Amendment of the United States Constitution. Arizona, 488 U.S. at 57-58, 109 S.Ct. at 337. Specifically, the Supreme Court explained as follows:

> We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

Id. First, the undersigned notes that there is no indication or testimony that the missing letters could have formed a basis for exonerating Petitioner. Next, the Court finds that the record contains no evidence of bad faith on the part of the prosecutor regarding the allegedly incriminating letters

written by Petitioner. In a letter dated July 16, 2001, Inmate Lorie Day notified William Sadler of the Mercer County Prosecutor's Office that she had information concerning the case involving Petitioner and Mrs. White. (Document No. 84-5, p. 127.) Specifically, Inmate Day stated that "Mrs. White has told me some very disturbing details about their case" and "I am willing to help you & give you helpful information in return for your help." Id. During her testimony, Inmate Day verified that her letter to the Prosecutor's Office did not notify the prosecutor of the existence of the allegedly incriminating letters written by Petitioner. (Document No. 61-7, p. 131.) The record indicates that Inmates Day and Barron wrote an additional letter to the Prosecutor's Office in September, 2001, stating that they had "some information." (Document No. 84-4, p. 322 and Document No. 61-8, pp. 57, 59, 69.) Following the receipt the above letters by the Prosecutor's Office, Sgt. Melissa Clemons interviewed and took the statements of the inmate witnesses in November, 2001. Through the interviews of the inmate witnesses, the prosecution became aware of the allegedly incriminating letters written by Petitioner to Mrs. White wherein Petitioner allegedly admitted to abusing the alleged victims. Subsequent to the inmate interviews, Sgt. Clemons requested a shake down of Mrs. White's cell in hopes of obtaining the letters. (Document No. 84-4, pp. 353-57, 384-85.) Jail officials, however, refused Sgt. Clemons' request stating that a search warrant would be necessary. (Id.) Both Ms. Garton and Sgt. Clemons testified that they did not proceed with getting a search warrant because Mrs. White was already aware that the prosecution had knowledge of the letters and that the inmate witnesses were going to testify. (Document No. 84-4, pp. 353-57, 384-85.) Ms. Garton and Sgt. Clemons concluded that if the letters were still in the possession of Mrs. White, the letters would be destroyed before a search warrant could be obtained and executed. (Id.) The record reveals that Mrs. White had a history of hiding letters received from

Petitioner to prevent their confiscation. Specifically, two of the inmate witnesses stated that Mrs. White would give the letters to them to "hold" when Mrs. White knew of, or suspected, a shake down by jail officials. (Document No. 61-7, pp. 106 and 122 and Document No. 61-8, p. 29 and 47.) The inmate witnesses, however, explained that the letters were returned to Mrs. White once the shakedown was over. (Document No. 61-7, p. 121 and Document No. 61-8, pp. 36 - 37, 47.) Therefore, it is not unreasonable to concluded that Mrs. White would have hid or destroyed any letters in her possession before the prosecutor had time to obtain and execute a search warrant. The Court finds no evidence of bad faith concerning the prosecution's failure to obtain possession of the allegedly incriminating letters written by Petitioner to Mrs. White. Thus, trial counsel was not ineffective in failing to raise the federal bad-faith suppression issue. Based on the foregoing, the undersigned finds the above claim of ineffective assistance of counsel should be dismissed.

### D.    *Ineffectiveness of Appellate Counsel:*

In his Petition, Petitioner argues "[t]he representation provided by Petitioner's court-appointed counsel . . . on direct appeal constituted ineffective assistance of counsel, in violation of the Sixth and Fourteenth Amendments to the Untied States Constitution. (Document No. 76, p. 28.)

*Habeas* petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 66 (1994). The petition must "set forth in summary form the facts supporting each of the grounds thus specified." Rule 2© of the Rules Governing Section 2254 Proceedings in the United States District Courts. "[N]otice pleading is not sufficient [in federal *habeas corpus*], for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" Blackledge v. Allison, 431 U.S. 63, 75 n. 7, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); also see Bernier v. Moore, 441 F.2d 395, 396 (1st Cir. 1971)(stating that "[t]he fundamental

purpose of *habeas corpus* would be undermined if the writ were prostituted by holding it out as available upon mere 'notice' without any showing of entitlement.") The petitioner must come forward with evidence that the claim has merit. Nickerson v. Lee, 971 F.2d 1125 (4th Cir. 1992), cert. denied, 507 U.S. 923, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993), *abrogation on other grounds recognized*, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). Unsupported, conclusory allegations do not entitle a petitioner to relief. See Beasley v. Halland, 649 F.Supp. 561, 566 (S.D.W.Va. 1986)(finding that "[m]ere conclusory charges of perjury and the knowing use of perjured testimony is insufficient to warrant a hearing or habeas relief"); Jones v. Gomez, 66 F.3d 199, 204 - 05 (9th Cir. 1995)(stating that "[c]onclusory allegations which are not supported by a statement of specific facts do want warrant habeas relief"). The undersigned finds that Petitioner above claim of ineffective assistance of appellate counsel is improperly pled. Petitioner merely concludes that appellate counsel was ineffective in his direct appeal. Petitioner fails to set forth any analysis or explanation as to why counsel should have taken certain acts or how Petitioner was prejudice by such failure. Therefore, the above claim of ineffective assistance of counsel should be dismissed.

**2.    Insufficient Indictment:**

In his Petition, Petitioner complains that his Indictment was non-specific and violated his right to due process. (Document No. 76, p. 26.) Petitioner explains that the Indictment charged conduct during the period of July, 1999 to November, 1999. (Id., p. 9.) Petitioner complains that "[e]ach of the indictment's 120 counts uses the following form in describing the date of the alleged offense which it charges: 'on or about the ___ day of [month], 1999, the exact date to the Grand Jury unknown.'" (Id.) Petitioner states that "Counts 1 through 60 allege sexual abuse by a custodian with respect to D.H., with twelve counts each for the months July, August, September, October, and

November of 1999, each set of twelve counts repeating the same pattern of alleged offenses." (Id.) Petitioner asserts that "[i]n the counts which follow Count 60, the indictment recites similar multiple counts of offenses involving the Petitioner and the children, in various combinations, and alleging either First Degree Sexual Assault, or Sexual Abuse by a Custodian, with identical numbers of counts for each of those two crimes, and identical numbers for each calendar month, for the period from July to November 2001, with no dates specified." (Id., p. 10.) Petitioner complains that the "trial judge overruled Petitioner's objection that the indictment failed to described conduct with sufficient specificity to give him notice of what he was charged with." (Id.)

In his Motion for Summary Judgment, Respondent argues that Petitioner's challenge to his Indictment rested on State law grounds, and those State law rulings are immune from federal *habeas* review. (Document No. 83, pp. 10 - 12.)

In Response, Petitioner argues that his "Second Amended Petition fully supports the conclusion that the state court's adjudication of his constitutional challenges to his conviction 'resulted in a decision that . . . involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" (Document No. 91, p. 9.) Petitioner contends that "[i]n their 2012 (circuit court) and 2013 (supreme court) decisions, the state courts did not reach [Petitioner's] federal claims." (Id., p. 10.) Petitioner asserts that "[t]he fact that the state courts disposed of his claims on state law grounds does not immunize their decisions from federal review." (Id.)

Regarding Petitioner's above *habeas* claim, the Circuit Court found as follows:

> The Petitioner's counsel preserved this objections to the overall indictment, which included numerous offenses with non-specific dates, to which the Petitioner unsuccessfully moved to have dismissed due to insufficient notice of the alleged crimes he had been charged with in order to mount a defense. The trial court

conducted pre-trial hearings on this subject and after the close of the State's case-in-chief, concluded that there was prima facie evidence to support the numerous counts. Evidently, the jury found that there had been proof beyond a reasonable doubt for reach of the remaining counts in the indictment as well.

* * *

Because there had been ample hearings concerning the evidence that sought to be admitted and/or suppressed for the trial, and that the trial court had painstakingly made every effort to determine that the evidence comported with the law, and being that the evidence admitted during the trial complied with the law, this Court cannot conclude that there had been constitutional evidentiary errors in the Petitioner's trial, and accordingly, the Court **FINDS and CONCLUDES** that the Petitioner has failed to prove this claims by a preponderance of the evidence.

(Document No. 88, pp. 292-93.) The West Virginia Supreme Court adopted and incorporated the "Circuit Court's well-reasoned finding and conclusions as to the assignment of error raised in this appeal" and affirmed the decision of the Circuit Court. (Document No. 84-5, pp.147-50.)

The Fourth Circuit has recognized that "[v]ariances and deficiencies in state indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985.) Due process requires that an accused be informed of the specific charge against him. See Cole v. Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948); see also In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948)(stating that "[a] person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense . . . are basic in our system of jurisprudence"). "It is generally sufficient that an indictment sets forth an offense in the words of the statute itself, as long as 'those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

First, to the extent Petitioner is claiming that his Indictment was defective under West

Virginia law, his claim is not cognizable in federal *habeas* corpus. Wright v. Angelone, 151 F.3d

151 (4th Cir. 1998)(citing Wills v. Egeler, 532 F.2d 1058, 1059 (6th Cir. 1976)(stating that the

"[d]etermination of whether a state court is vested with jurisdiction under state law is a function of

the state courts, not the federal judiciary")); also see Estelle, 502 U.S. at 67 - 68, 112 S.Ct. at 475

(stating that "[i]t is not the province of a federal habeas corpus court to reexamine state court

determinations on state-law questions.") Next, the undersigned finds that Petitioner's Indictment

satisfied the requirements of due process by adequately informing Petitioner of the specific charges

against him. A review of the Indictment reveals that Petitioner was informed of the following:

(1)     That he was being charged with First Degree Sexual Assault by having sexual intercourse with D.H., who was eleven years old or less, on 5 occasions[12] in July (Counts 1, 3, 5, 7, 8 ), August (Counts 13, 15, 17, 19, 20), September (Counts 25, 27, 29, 31, 32), October (Counts 37, 39, 41, 43, 44), and November (Counts 49, 51, 53,55, 56);

(2)     That he was being charged with sexual abuse by a custodian by engaging in sexual intercourse with D.H. on 4 occasions in July (Counts 2, 4, 6, 9), August (Counts 14, 16, 18, 21), September (Counts 26, 28, 30, 33), October (Counts 38, 40, 42, 45), and November (50, 52, 54, 57);

(3)     That he was being charged with sexual abuse by a custodian by engaging in sexual exploitation of D.H. by forcing her to have sexual intercourse with another child (St.H. Sh.H., and M.H.) on 3 occasions in July (Counts 10-12), August (Counts 22-24), September (Counts 34-36), October (Counts 46-48), and November (Counts 58-60);

(4)     That he was being charged with First Degree Sexual Assault by having sexual intercourse with St.H., who was eleven years old or less, on 1 occasion in July (Count 64), August (Count 68), September (Count 72), October (Count 76), and November (Count 80);

(5)     That he was being charged with sexual abuse by a custodian by engaging in sexual

_____

[12]  D.H. reported that she engaged in sexual intercourse with Petitioner as follows: vaginal intercourse, anal intercourse, she performed oral sex on Petitioner, Petitioner performed oral vaginal and anal sex on D.H.

exploitation of St.H. by forcing him to have sexual intercourse with another child (D.H. Sh.H., and M.H.) on 3 occasions in July (Counts 61-63), August (Counts 65-67), September (Counts 69-71), October (Counts 73-75), and November (Counts 77-79);

(6)     That he was being charged with First Degree Sexual Assault by having sexual intercourse with Sh.H., who was eleven years old or less, on 1 occasion in July (Count 84), August (Count 88), September (Count 92), October (Count 96), and November (Count 100);

(7)     That he was being charged with sexual abuse by a custodian by engaging in sexual exploitation of Sh.H. by forcing her to have sexual intercourse with another child (D.H. St.H., and M.H.) on 3 occasions in July (Counts 81-83), August (Counts 85-87), September (Counts 89-91), October (Counts 93-95), and November (Counts 97-99);

(8)     That he was being charged with First Degree Sexual Assault by having sexual intercourse with M.H., who was eleven years old or less, on 1 occasion in July (Count 104), August (Count 108), September (Count 112), October (Count 116), and November (Count 120);

(9)     That he was being charged with sexual abuse by a custodian by engaging in sexual exploitation of M.H. by forcing him to have sexual intercourse with another child (D.H. St.H., and Sh.H.) on 3 occasions in July (Counts 101-103), August (Counts 105-107), September (Counts 109-111), October (Counts 113-115), and November (Counts 117-119).

(Document No. 84-1, pp. 172-90). The undersigned finds that the foregoing was sufficient. "[W]hen time is not of the essence regarding a crime charged, the absence of specific dates in the indictment does not invalidate the charging document." King v. Mirandy, 2013 WL 6882280, * 17 (N.D.W.Va. Dec. 31, 2013)(finding that the absence of a specific date in the indictment charging defendant with sexual contact and sexual intercourse of his step daughter did not invalidate the indictment). The Indictment reveals that Petitioner was charged with one count per month for each sexual act that occurred for each child victim. There is no indication that time was of the essence regarding the crimes charge. Furthermore, the undersigned finds that the Indictment clearly set forth the charges against Petitioner. First, the Indictment charged that Petitioner committed First Degree Sexual

Assault by "being fourteen years or more" and engaging in sexual intercourse with D.H., St.H.,

Sh.H. and M.H, all being eleven years old or less, in violation of West Virginia Code § 61-8B-3.

Next, the Indictment charged that Petitioner committed Sexual Abuse by a Custodian by engaging

in sexual intercourse and/or sexual exploitation of D.H., St.H., Sh.H., and M.H., who were "under

his care, custody, and control," in violation of West Virginia Code § 61-8D-5. Thus, the Indictment

sets forth the charges against Petitioner in the words of the statute, which "fully, directly, and

expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute

the offense intended to be punished." Based on the foregoing, the undersigned finds that Petitioner's

Indictment satisfied the requirements of due process by adequately informing Petitioner of the

specific charge against him. The undersigned, therefore, recommends that Petitioner's foregoing

claim be dismissed. **3.**          **Improper Admission of Evidence:**

Petitioner contends that the trial court's admission of testimony by Ms. Hasty and the inmate

witnesses resulted in a violation of his right to due process. (Document No. 76, p. 27.) Generally,

federal *habeas* relief is available with respect to a trial court's evidentiary rulings, only if the ruling

denied the defendant the right to a fair trial. See Abrams v. Barnett, 121 F.3d 1036, 1042 (7th Cir.

1997). When the challenged evidentiary rulings "so infected the entire trial that the resulting

conviction violates due process," it is presumed that the defendant was denied a fair trial. Cupp v.

Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). The fact that the admitted

evidence allegedly was improper under State law, however, does not provide a basis for *habeas*

relief. "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned

review of the wisdom of state evidentiary rules." Marshall v. Lonberger, 459 U.S. 422, 438, n. 6,

103 S.Ct. 843, 853, n. 6, 74 L.Ed.2d 646 (1983). The proper inquiry for the Court is whether the

admission of the evidence itself so infected the entire trial that the resulting conviction violates due process. See Estelle, 502 U.S. at 72, 112 S.Ct. at 482.

### A.    *Ms. Hasty's Testimony:*

Petitioner argues that Ms. Hasty's testimony violated his due process rights "because there was no firmly rooted hearsay exception" and "because the trial court failed to exercise a gatekeeper function with respect to Hasty's methodology." (Document No. 76, p. 8.) Respondent argues that Petitioner's claim is without merit because it was "disposed of by the state habeas court on state law grounds." (Document No. 83, pp. 13 - 14.) In Reply, Petitioner contends that Ms. Hasty's testimony violated his right to due process. (Document No. 91.) During a pre-trial motions hearing, the trial court entertained objections by defense counsel that there was a lack of foundation for Ms. Hasty's testimony and her testimony constituted hearsay. (Document No. 61-1, pp. 32 - 46.) The record reveals that Ms. Hasty was thoroughly questioned concerning the methods she used to treat the alleged victims. (Id.) The trial court subsequently denied defense counsel's Motion to Suppress the testimony of Ms. Hasty. The trial court determined that Ms. Hasty's testimony was admission pursuant to State v. Pettrie, 209 W.Va. 449, 549 S.E.2d 323 (2001). In Pettrie, the West Virginia Supreme Court held as follows:

> We, therefore, hold that when a social worker, counselor, or psychologist is trained in play therapy and thereafter treats a child abuse victim with play therapy, the therapist's testimony is admissible at trial under the medical diagnosis or treatment exception to the hearsay rule, West Virginia Rule of Evidence 803(4), if the declarant's motive in making the statement is consistent with the purposes of promoting treatment and the content of the statement is reasonably relied upon by the therapist for treatment. The testimony is inadmissible if the evidence was gathered strictly for investigative or forensic purposes.

Pettrey, 209 W.Va. at 460, 549 S.E.2d at 334. The record reveals that the alleged child victims made statements concerning the alleged sexual abuse during treatment sessions and the content of those

43

statements were reasonably relied upon by Ms. Hasty for treatment of the alleged child victims. (Document No. 61-1, pp. 38 - 46.) Based on the foregoing, the undesigned cannot find that the trial court's evidentiary ruling was erroneous and "so infected the entire trial that the resulting conviction violates due process." Accordingly, the undersigned concludes that Petitioner has failed to establish a denial of a federal right as to the above claim and therefore, the claim should be dismissed.

## B.    *Letters:*

In his Petition, Petitioner argues that the trial court improperly permitted hearsay testimony by the inmate witnesses concerning the contents of letters allegedly written by Petitioner to Mrs. White in violation of his right to due process. (Document No. 76, p. 27.) Specifically, Petitioner argues that the State failed to preserve the letters allegedly written by Petitioner, which was "original evidence in the State's possession." (Id., p. 27.) In support of the foregoing claim, Petitioner sets forth the same arguments as those set forth in support of the ineffective assistance of counsel claim. (Id., pp. 20 - 23.) Petitioner continues to cite Osakalumi, complaining that "the court never conducted, the six part, analysis required in West Virginia when the State fails in a criminal prosecution to produce to the defense evidence which is or was in its possession." (Id., pp. 22 - 23.) Petitioner notes that "[t]he issue was presented to the state courts under both *Osakalumi, supra*, and *Arizona v. Youngblood*, 488 U.S. 51 (1988), analyzed at length in *Oskalumi*, that is under both state and federal authority." (Id., p. 23.)

In his Motion for Summary Judgment, Respondent first argues that Petitioner above claim must be dismissed because the State *habeas* court disposed of Petitioner's above claim "that rest[ed] on State law grounds, and those State law rules are immune from federal habeas review." (Document

44

No. 83, pp. 9 - 11.) Next, Respondent argues that "there was no *Osakalumi* violation." (Id., pp. 14 - 15.)

In Response, Petitioner argues that his above claim does allege a violation of his federal constitutional rights. (Document No. 91.) Specifically, Petitioner argues that he "explicitly based his *Osakalumi*-related claim on the federal constitution." (Id., p. 7.) Petitioner explains that "*Osakalumi* itself recognizes that West Virginia's jurisprudence on the suppression of evidence derives directly from federal constitutional jurisprudence." (Id.) Petitioner contends that the State *habeas* court's decisions "do not address [Petitioner's] federal constitutional claims." (Id.) Specifically, Petitioner asserts that the trial court never considered the "*Osakalumi* issue, or a more explicitly federal bad-faith issue, regarding the lost evidence." (Id., p. 8.)

First, the undersigned finds that Petitioner's claim must be dismissed to the extent that Petitioner's claim relies upon State law and challenges the State court's evidentiary ruling. See Estelle, 502 U.S. at 67-68, 112 S.Ct. at 480. Next, the undersigned finds that the trial court's admission of the testimony from the inmate witnesses regarding the letters allegedly written by Petitioner did not deny Petitioner a fundamentally fair trial. As explained above, the undersigned finds that Petitioner's federal constitutional right to due process as set forth in Arizona[13] was not violated because there was no indication that the State acted in bad faith in failing to preserve the incriminating letters allegedly written by Petitioner. Based on the foregoing, the undesigned cannot find that the trial court's evidentiary ruling was erroneous or that it "so infected the entire trial that

---

[13] *Arizona* is cited and discussed throughout the *Osakalumi* opinion.

the resulting conviction violates due process."[14] Accordingly, the undersigned concludes that Petitioner has failed to establish a denial of a federal right as to the above claim and therefore, the claim should be dismissed.

**4.** **Confrontation Clause:**

In his Petition, Petitioner argues that "the refusal of the State to permit Petitioner to confront his purported accusers, that is, his wife's children, or at least those of them who purportedly accused him, deprived Petitioner of his rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Article III, § 14, of the West Virginia Constitution." (Document No. 27, p. 29.) Petitioner explains that "[t]he admission of the statements through the witness Hasty was a denial of Petitioner's right to confrontation." (Id., p. 8.)

In his Motion for Summary Judgment, Respondent first argues that Petitioner request for relief pursuant to the West Virginia Constitution is not cognizable in federal *habeas* corpus. (Document No. 83, p. 16.) Citing Blount v. Hardy, 337 Fed.Appx. 271 (4th Cir. 2009), Respondent argues that "the Confrontation Clause does not bar an expert from testifying as to a child's statements made during play therapy." (Id.) Respondent contends that "for statements to be 'testimonial,' the declarant must have known that the statements would be used against the defendant at trial." (Id.) Respondent argues that the State *habeas* court appropriately denied Petitioner's above claim because the record revealed that the children were taken to Ms. Hasty for therapy purposes and "there is no evidence suggesting that they had any knowledge that their statements would be used in court." (Id., p. 17.)

---

[14] Notwithstanding the admission of the inmate witnesses' testimony, there was additional witness testimony and evidence to support Petitioner's underlying conviction.

In Response, Petitioner fails to specifically address Respondent's above argument. (Document No. 91.) Instead, Petitioner argues that his "Second Amended Petition fully supports the conclusion that the state court's adjudication of his constitutional challenges to his conviction 'resulted in a decision that . . . involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" (Id., p. 9.) Petitioner contends that "[i]n their 2012 (circuit court) and 2013 (supreme court) decisions, the state courts did not reach [Petitioner's] federal claims." (Id., p. 10.) Petitioner asserts that "[t]he fact that the state courts disposed of his claims on state law grounds does not immunize their decisions from federal review." (Id.)

Regarding Petitioner's above *habeas* claim, the Circuit Court found as follows:

> Indeed, the Petitioner complains that his counsel failed to object to Ms. Hasty's testimony on the basis of violation of his 6th Amendment right to confront his accusers, as the Petitioner had no access to the young victims in this case. The trial court permitted the testimony of Phyllis Hasty in accordance with the Supreme Court of Appeals ruling on the same. The trial court conducted pre-trial suppression hearings on the matter and concluded, pursuant to law, that the testimony would be admissible because the disclosure had been made in a therapeutic setting. Although the Petitioner complains that he was unable to access the children and therefore was deprived of his constitutional right to confront his accusers, the trial transcript reveals that the children were frightened of the Petitioner and would have been unable to testify. This Confrontation Clause issue had been previously addressed in *State v. Pettrey*, 209 W.Va. 449 (2001) and again in *State v. Shrewsbury*, 213 W.Va. 327 (2003) where the child victims of sexual offense did not testify at trial, but therapist and other persons were allowed to testify about the victim's disclosures.

(Document No. 88, pp. 290-91.) The West Virginia Supreme Court adopted and incorporated the "Circuit Court's well-reasoned finding and conclusions as to the assignment of error raised in this appeal" and affirmed the decision of the Circuit Court. (Document No. 84-5, pp.147-50.)

To the extent Petitioner is alleging a violation of the West Virginia Constitution, Petitioner's claim is not cognizable in federal *habeas corpus*. To the extent Petitioner is alleging a violation of

the Sixth Amendment right under the United States Constitution, the undersigned will consider the merits of his claim. The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witness against him." U.S. Const. Amend. VI. Before testimonial hearsay evidence may be admitted, regardless of the inherent trustworthiness of the statement, the Sixth Amendment requires that a witness be unavailable and that there be a prior opportunity for cross examination. Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Supreme Court explained that "testimonial" includes "at a minimum, prior testimony at a preliminary hearing, before a grand jury, or at a former trial; or to police interrogations." Id., 541 U.S. at 68, 124 S.Ct. at 1374. In Blount v. Hardy, 337 Fed.Appx. 271 (4th Cir. 2009), the Fourth Circuit recognized that a statement made by a child to his or her therapist was not "testimonial" where the child did not know, or have any reason to know, that his or her statement would be used against the defendant a trial. Blount v. Hardy, 337 Fed.Appx. 271 (4th Cir. 2009)(finding that the admission of out-of-court statements made by a victim to therapists did not violate defendant's Confrontation Clause rights); also see United States v. Peneaux, 432 F.3d 882 (8th Cir. 2005)(finding that the admission of statements to a physician by a child regarding physical abuse does not violate the Sixth Amendment right to confrontation). In the instant case, the record reveals that the alleged child victims (D.H. and St.H.) were initially brought to Ms. Hasty for treatment of attention deficit symptoms. (Document No. 61-1, pp. 28 and 38.) Ms. Hasty testified that her contact with the alleged child victims was solely for treatment purposes, not an investigative evaluation. (Id., pp. 39 and 43.) Thus, there is no indication that the alleged child victims knew, or should have known, that their statements made to the Ms. Hasty would be used against Petitioner at trial. Accordingly, the undersigned finds that Petitioner's Sixth Amendment right was not violated

because the statements made by the alleged child victims to Ms. Hasty were not testimonial. The undersigned, therefore, recommends that Petitioner's above claim be dismissed.

5.   **Excessive Sentence:**

In his Petition, Petitioner argues that his "sentence, under all of the facts and circumstances of the case, is so disproportionate to the offenses involved that it violates the cruel and unusual prohibition of the Eighth Amendment to the United States Constitution, and Article III, § 5, of the West Virginia Constitution." (Document No. 76, p. 28.)

In his Motion for Summary Judgment, Respondent argues that Petitioner's "excessive sentence claim lacks merit." (Document No. 83, pp. 17 - 18.) First, Respondent notes that "Petitioner has offered no particularized argument as to why his sentence violates the Eighth Amendment." (Id., p. 18.) Next, Respondent states that Petitioner received statutorily authorized sentences for each conviction, and "there is no evidence that these sentences are unjustified in light of the sentences imposed within West Virginia for similar crimes, or that they are disproportionate when compared to sentences in other states." (Id.)

In Response, Petitioner fails to specifically address Respondent's above argument. (Document No. 91.) Instead, Petitioner argues that his "Second Amended Petition fully supports the conclusion that the state court's adjudication of his constitutional challenges to his conviction 'resulted in a decision that . . . involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" (Id., p. 9.) Petitioner contends that "[i]n their 2012 (circuit court) and 2013 (supreme court) decisions, the state courts did not reach [Petitioner's] federal claims." (Id., p. 10.) Petitioner asserts that "[t]he fact that the state courts disposed of his claims on state law grounds does not immunize their decisions from federal review."

(Id.)

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. Amend. VIII. The United States Supreme Court has recognized that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." Rummel v. Estelle, 445 U.S. 263, 271, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). In Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the United States Supreme Court identified three "objective" factors for courts to consider in determining whether a sentence violates the proportionality principle: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for the commission of the same crime in other jurisdiction. Solem v. Helm, 463 U.S. 277, 290-92, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). The Fourth Circuit, however, has "consistently and repeatedly held that the Eighth Amendment proportionality review 'is not available for any sentence less than life imprisonment without possibility of parole.'" United States v. Wellman, 716 F.Supp.2d 447, 457-58 (S.D.W.Va. 2010), citing United State v. Malloy, 568 F.3d 166, 180 (4th Cir. 2009). This Court, however, has engaged in a proportionality analysis guided by Solem when a defendant's sentence is a *de facto* life sentence. Id., 716 F.Supp.2d at 460-61.

To the extent Petitioner is alleging a violation of the West Virginia Constitution, Petitioner's claim is not cognizable in federal *habeas corpus*. To the extent Petitioner is alleging a violation of the Eighth Amendment right under the United States Constitution, the undersigned will briefly consider his claim. It is well recognized that *habeas* petitions must meet heightened pleading requirements. McFarland, 512 U.S. at 849, 114 S.Ct. at 2568. Unsupported, conclusory allegations

50

do not entitle a petitioner to relief. See Beasley v. Halland, 649 F.Supp. at 566. In the instant case, Petitioner merely concludes that his sentence is disproportionate in violation of the Eighth Amendment. Petitioner fails to set forth any evidence supporting his claim. The record reveals that Petitioner was found guilty of repeatedly abusing four young victims over a period of several months. Specifically, Petitioner was convicted of thirty-one counts of First Degree Sexual Abuse and seventy-four counts of Sexual Abuse by a Custodian. The trial court imposed statutorily authorized sentences for each conviction.[15] Additionally, the trial court ordered that the majority of the sentences run concurrently.[16] (Document No. 84-1, pp. 32 - 34.) Petitioner fails to submit any evidence that his sentences were unduly harsh, that his sentences were unjust compared to the sentences imposed on other criminals in the same jurisdiction, or that his sentences were unjust compared to the sentences imposed for the commission of the same crime in other jurisdiction. Accordingly, the undersigned finds that Petitioner's above claim is without merit and should be dismissed.

---

[15] The penalty for First Degree Sexual Assault is no less than fifteen years and no more than thirty-five years. W. Va. Code § 61-8B-3. The penalty for Sexual Abuse by a Custodian is no less than ten years to no more than twenty years. W. Va. Code. 61-8D-5.

[16] Specifically, the trial court sentenced Petitioner to an "indeterminate term of not less than fifteen (15) nor more than thirty-five (35) years as provided by law for each offense of 'Sexual Assault - First Degree' as to Counts 1, 3, 5, 13, 15, 17, 25, 27, 29, 37, 39, 41, 49, 51, 53, 64, 68, 72, 76, 80, 84, 88, 91, 92, 96, 100, 104, 108, 112, 116, and 120" and "not less than ten (10) nor more than twenty (20) years as provided by law for each offense of 'Sexual Abuse by a Custodian' as to Counts 2, 4, 6, 10, 11, 12, 14, 16, 18, 22, 23, 24, 26, 28, 30, 34, 35, 36, 38, 40, 42, 46, 47, 48, 50, 52, 54, 58, 59, 60, 61, 62, 63, 65, 66, 67, 69, 70, 71, 73, 74, 77, 78, 79, 81, 82, 83, 85, 86, 87, 89, 90, 93, 94, 95, 97, 98, 99, 101, 102, 103, 105, 106, 107, 109, 110, 111, 113, 114, 115, 117, 118, and 119 . . .; that the defendant's sentences as to Counts 1, 2, 72, 73, 88, 89, 104, and 105 run consecutively with one another, and that the remaining counts run concurrently with each other and with Counts 1, 2, 72, 73, 88, 89, 104, and 105." (Document No. 84-1, p. 33.)

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's Motion for Summary Judgment (Document No. 82.), **DISMISS** Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody (Document Nos. 1, 52, and 76.), and remove this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and transmit a copy to counsel of record.

Date: July 22, 2014.

R. Clarke VanDervort
United States Magistrate Judge