IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

BARRY WHITE,

       Plaintiff,

v.                        CIVIL ACTION NO. 1:07-0567

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

       Defendant.

MEMORANDUM OPINION AND ORDER

      Pending before the court is plaintiff's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody.  By Standing Order, the action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of findings of fact and recommendations regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Magistrate Judge VanDervort submitted his Findings and Recommendation ("PF&R") to the court on July 22, 2014, in which he recommended that this court grant defendant's motion for summary judgment, dismiss plaintiff's petition under 28 U.S.C. § 2254, and remove the matter from the court's docket.

      In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days plus three mailing days in which to file any objections to Magistrate Judge VanDervort's Findings and Recommendations.  After receiving several extensions

of the deadline for filing his objections, counsel for White,
Thomas J. Gillooly, filed an "unopposed supplemental motion for
order extending deadline for objections, and permitting
petitioner to file objections pro se." (Doc. No. 96).
Construing Mr. Gillooly's motion as one to withdraw as counsel,
the court granted the motion on September 4, 2014. In that
Order, the court also gave White an opportunity to file pro se
objections to the PF&R. On September 17, 2014, plaintiff filed
timely objections to the Magistrate Judge's Findings and
Recommendation. With respect to those objections, the court has
conducted a de novo review.[1]

_____

[1] To the extent that White argues that this court has
somehow run afoul of Anders v. California, 386 U.S. 738 (1967), in
granting Mr. Gillooly's motion to withdraw, that claim fails. In
Anders, the Supreme Court "outline[d] the circumstances under which
an appellate court may grant appointed counsel's motion to withdraw
from representation of a defendant who desires to appeal when
counsel believes an appeal would be frivolous." Williams v.
Angelone, 178 F. 3d 1288, 1999 WL 249026, *4 (4th Cir. 1999).
However, the constitutional right to appointed counsel is a
prerequisite to application of Anders procedures. Pennsylvania v.
Finley, 481 U.S. 551, 556 (1987). Given that prisoners have no
constitutional right to counsel in mounting collateral attacks on
convictions as the right to appointed counsel extends only to the
first appeal of right, there was no requirement that Mr. Gillooly
file an Anders brief in this matter. See id. at 555-56; see also
D'Antoni v. United States, 59 F.3d 173, 1995 WL 375874, *1 (7th
Cir. June 20, 1995) ("An Anders brief need not be filed in a civil
case. Because we are not constitutionally required to appoint
counsel in a section 2255 proceeding, post-conviction counsel has
no due process obligation to follow the procedures of Anders when
attempting to withdraw. . . ."). Accordingly, there is no merit to
White's argument that he is entitled to a more searching review
than would normally be required because Mr. Gillooly did not file
an Anders brief. See Objections at p.3 ("This Court based upon
this failure, must now examine the entire record and consider any
potetial [sic] objectable material, whether the Petitioner has

2

On December 7, 2001, following a four-day jury trial in the Circuit Court of Mercer County, West Virginia, White was convicted of sexually abusing his stepchildren.  Specifically, the jury found him guilty of thirty-one counts of first degree sexual assault and seventy-three counts of sexual abuse by a custodian.  The stepchildren, D.H., St.H., Sh.H, and M.H., were between the ages of two and eight at the time of the abuse.  By Order entered on April 24, 2002, White was sentenced to a term of imprisonment of not less than fifteen or more than thirty-five years on Counts 1, 72, 88, and 104, and to a term of not less than ten nor more than twenty years on Counts 2, 73, 89, and 105, all of which were ordered to run consecutively for a total term of imprisonment of between 100 to 220 years.  The sentences on the remaining counts were ordered to run concurrently with each other and the aforementioned eight consecutive sentences.

White's first objection concerns the testimony of Phyllis Hasty, a licensed play therapist, whose testimony according to him, should not have been admissible at his criminal trial.  In this case, White contends that Hasty's testimony: 1) violated his constitutional right to confront and cross examine his accusers; 2) was admitted without laying a proper foundation; 3) invaded

specifically raised an objection or not under his new pro se, status in this case.").  In reviewing plaintiff's objections, the court has, however, applied the liberal standard applicable in pro se cases.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

the province of the jury by testifying as to the ultimate issue;
4) was unreliable; 5) exceeded the scope of its admissibility
under State v. Pettrey, 209 W. Va. 449 (2001); and 6) serves as a
basis for his claim of ineffective assistance of counsel.
Magistrate Judge VanDervort found no merit in these arguments.

In Pettrey, the Supreme Court of Appeals of West Virginia
addressed the admissibility of a play therapist's testimony
regarding statements made to her during such therapy.  State v.
Pettrey, 209 W. Va. 449 (2001).  In that case, the court held:

> [W]hen a social worker, counselor, or
> psychologist is trained in play therapy and
> thereafter treats a child abuse victim with play
> therapy, the therapist's testimony is admissible
> at trial under the medical diagnosis or treatment
> exception to the hearsay rule, West Virginia Rule
> of Evidence 803(4), if the declarant's motive in
> making the statement is consistent with the
> purposes of promoting treatment and the content
> of the statement is reasonably relied upon by the
> therapist for treatment.  The testimony is
> inadmissible if the evidence was gathered
> strictly for investigative or forensic purposes.
> Moreover, statements which attribute fault to a
> member of the victim's household may reasonably
> be pertinent to treatment and are thus admissible
> because these statements are relevant to
> prevention of recurrence of injury.

Id. at 460.  In so holding, West Virginia's highest court
specifically considered whether admission of the play therapist's
testimony denied Pettrey his right to confrontation under the
Sixth Amendment.  See id. at 457-60.  Citing applicable Supreme
Court guidance on that issue, Ohio v. Roberts, 448 U.S. 56

4

(1980), the West Virginia Supreme Court of Appeals found that it did not.  See id.

      During the underlying trial, Ms. Hasty testified she is a children's counselor and registered play therapist at Southern Highlands Community Mental Health Center.  See Exhibit[2] 10 at 205. Ms. Hasty testified that she has a bachelor's degree and a master's degree in social work and that she is also a licensed social worker.  See id. at 205-06.  Prior to being employed in her current job, Hasty worked for the West Virginia Department of Health and Human Resources as a child protective service worker. See id. at 205.  Of the qualifications for becoming licensed in play therapy, Ms. Hasty testified that "you have to have a Masters Degree, then you have to have 2000 hours of counseling post Masters Degree, you have to have 500 of those hours supervised by a Registered Play Therapy Supervisor, you have to have a [sic] 150 hours of training specifically in play therapy that has been approved by the National Play Therapy Association." Id. at 206.

      As to the importance of play therapy in treating young children, Ms. Hasty testified:

> Children, particularly young children, do
> not enter into a traditional counseling
> relationship like you or I would, a talk
> relationship where I would come in and tell you I

---

[2] Exhibits are to Defendant's Motion for Summary Judgment.

was feeling sad and why I was feeling sad,
children don't have that kind of verbal skill to
do that kind of processing so they are enabled to
do that through their language, and their
language is play, so when you give them tools
such as puppets, such as a dollhouse, such as
activities where you're doing drawings or a
painting, a lot of times children can express
their feelings in those modalities when they
can't just come in and tell you I'm upset today
because my dog died yesterday.

Id. at 207.  Upon further questioning, Hasty stated:

> Q:    Before we go into specifics, maybe this is jumping
> ahead a bit, but what's - - what's the purpose of
> play therapy, like when you take these children
> into treat 'em where are you headed, I mean I
> don't know how you cure a child whose been
> sexually abused?
>
> A:    Basically, with - - with any therapy you're - -
> you're trying to raise the level of functioning of
> the child, you're trying to reduce the symptoms
> they came in with, so for a sexually abused child
> a lot of times they've come in with fears, and
> nightmares, a lot of times that's where we need to
> begin, we - - we work on trying to help the child
> feel safe, I work with the family in setting up
> certain things that they do to - - to give the
> child a sense of safety, then you need to process
> the abuse.  You can't just let the child bury that
> abuse and pretend it didn't happen and not process
> it, it - - a child needs to verbalize it, and a
> lot of times they need to reframe it because a
> child is looking at it that it was their fault and
> you need to help that child look at the facts,
> you're this big that person was that big, what
> kind of control was taken away from you, you
> reframe it, you help the child get rid of the
> shame, the guilt, the anger, the - - the grief,
> they lost - - control was taken away from them and
> a lot of these kids are in grief when they come.

Id. at 209-10.

        Ms. Hasty testified that D.H. and St. H. started coming
to Southern Highlands Community Mental Health Center in 1998 for
"behavioral problems." Id. at 210.  Their mother brought them
back in 1999 a "couple of times" but, after they were placed in
foster care in August of 2000, they began coming to Southern
Highlands on a more regular basis. See id. at 210-14.  During
her second session with Ms. Hasty, D.H. "shocked" Hasty when she
recounted being touched inappropriately by defendant. Id. at
220-21.  According to Hasty, she was the first person to whom
D.H. had mentioned abuse at the hands of her stepfather and that
D.H. "just told me out of the blue." Id. at 221.  In later
sessions, D.H. elaborated on the sexual abuse. See id.  St.H.,
who had initially begun seeing Ms. Hasty for treatment of
attention deficit disorder and aggressive behavior, later
reported that defendant had sexually abused he and his siblings.
See id. at 227-29.  Ms. Hasty also testified that D.H., St.H.,
and Sh.H had all reported that defendant had told all four
children to perform oral sex on each other. See id. at 224.  Ms.
Hasty later began working with Sh.H. in order "to teach her
proper boundaries and body rights." Id. at 224.

        Ms. Hasty testified that she began seeing the children at
the request of their foster mother, "for incidents, as far as

[she] knew, totally unrelated to [criminal] proceedings."
Exhibit 8 at 37.  According to her, her involvement "was not an
investigative evaluation by any means."  Id. at 38.  Based on the
foregoing, the trial court determined that Ms. Hasty's testimony
was admissible under Pettrey.  Both the state habeas court and
the Supreme Court of Appeals agreed.[3]

The issue before this court is whether Hasty's statements
violated White's Sixth Amendment right to confront the witnesses
against him.  See Nelson v. Farrey, 874 F.2d 1222, 1226 (7th Cir.
1989) (Whether the Supreme Court of Wisconsin correctly found
that the admission into evidence of T.'s statements to Dr. McLean
did not violate Wisconsin's hearsay rule is an issue of state
law; it is nothing to us.  The only question for us is whether
the admission of those statements, as the district court
believed, denied [petitioner] his Sixth Amendment right. . . to
confront the witnesses against him.").  This court agrees with
Magistrate Judge VanDervort that they did not.

Under 28 U.S.C. § 2254, White is entitled to federal
habeas relief only if he "is in custody in violation of the
Constitution or laws or treaties of the United States."  28

---

[3] Of the usefulness, of this type of testimony, Judge
Posner noted that "[i]f such evidence were never admissible,
molesters of small children, especially incestuous molesters, would
rarely be punished."  Nelson v. Farrey, 874 F.2d 1222, 1229 (7th
Cir. 1989).

U.S.C. § 2254(a).  Section 2254(d) provides that when the issues raised in a § 2254 petition were raised and considered on the merits in State court habeas proceedings, federal habeas relief is unavailable unless the State court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal habeas Court may grant habeas relief "if the State court arrives at a conclusion opposite to that reached by this Court on a question of law or if the State court decides a case differently than this Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. 362, 412-13 (2000). A federal habeas Court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. <u>Id</u>. In determining whether the State court's decision was contrary to, or was an unreasonable application of, Supreme Court precedent, all factual determinations by the State court are entitled to a presumption of correctness. <u>See</u> 28 U.S.C. § 2254(e).

9

A state court's decision is "contrary to" clearly established federal law when it "applies a rule that contradicts the governing law set forth" by the United States Supreme Court, or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." <u>Williams</u>, 529 U.S. at 405-06. A state court's decision involves an "unreasonable application" of clearly established federal law under § 2254(d)(1) "if the state court identifies the correct governing legal rule from . . . [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." <u>Id.</u> at 407. "The state court's application of clearly established federal law must be 'objectively unreasonable,' and 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" <u>Robinson v. Polk</u>, 438 F.3d 350, 355 (4th Cir.2006) (quoting <u>Williams</u>, 529 U.S. at 411). Moreover, when "assessing the reasonableness of the state court's application of federal law, the federal courts are to review the result that the state court reached, not whether [its decision] [was] well

reasoned." <u>Wilson v. Ozmint</u>, 352 F.3d 847, 855 (4th Cir.2003) (quotation marks omitted).

       Under this deferential standard, the court cannot say that the State court's adjudication of the Confrontation Clause issue is contrary to, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  The state habeas court determined that the Confrontation Clause jurisprudence flowing from <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980) as applied in <u>Pettrey</u>, applicable to White's claim would not bar the use of Hasty's testimony.[4]  The evidence shows that the child victims were not brought to Ms. Hasty for investigative or forensic purposes.  The statements made to Ms. Hasty by the children regarding the sexual abuse were made in a therapeutic context.  Her sole involvement with the children was for diagnosis and treatment.  Furthermore, the statements were such that they were reasonably relied upon by Ms. Hasty in her diagnosis and treatment.  Accordingly, White's

---

    [4] The state court correctly noted that <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), does not apply retroactively and was not applicable during White's trial.  <u>See</u> <u>Whorton v. Bockting</u>, 549 U.S. 406, 421 (2007).  However, even under <u>Crawford</u>, the testimony would not have been inadmissible. <u>See</u> <u>Blount v. Hardy</u>, 337 F. App'x 271, 276 (4th Cir. 2009) (concluding that admission of three-year-old victim's statements to therapist did not violate defendant's Confrontation Clause rights); <u>United States v. Peneaux</u>, 432 F.3d 882, 896 (8th Cir. 2005) (holding the admission of statements to a physician by a child regarding physical abuse does not violate the Sixth Amendment right to confrontation).

objection to that testimony on Confrontation Clause grounds is
OVERRULED.  Furthermore, given the foregoing and for the reasons
expressed in the PF&R, White's other objections concerning the
Hasty testimony are likewise OVERRULED.

White's next objection goes to the magistrate judge's
conclusion that there was no merit to his challenge to the
sufficiency of the indictment.  White claims that the indictment
was non-specific and, therefore, violated his right to due
process because it failed to describe conduct with sufficient
specificity to give him notice of the charges against him.

Under federal law, an indictment is sufficient under the
United States Constitution if it, "first, contains the elements
of the offense charged and fairly informs the defendant of the
charge against which he must defend, and, second, enables him to
plead an acquittal or conviction in bar of future prosecutions
for the same offense."  Hamling v. United States, 418 U.S. 87,
117 (1974).  Furthermore, as our appeals court has stated
"because the Fifth Amendment requirement of indictment by grand
jury does not apply to the states . . . federal cases involving
indictments are of little value when evaluating the sufficiency
of a state accusatory pleading."  Hartman v. Lee, 283 F.3d 190,
195 n.4 (4th Cir. 2002) (internal citations and quotations
omitted).  "[T]he sufficiency of a state indictment "is not a
matter for federal habeas corpus relief unless the indictment is

12

so defective that the convicting court had no jurisdiction."
<u>Evans v. Cain</u>, 577 F.3d 620, 624 (5th Cir. 2009) (emphasis in
original).

      After reviewing the indictment herein, the court finds
that the indictment was not so fatally defective.  As Magistrate
Judge VanDervort noted, in its simplest form, the indictment
herein charged White as follows:

     1)    With First Degree Sexual Assault by having sexual
intercourse with D.H., who was eleven years old or
less, on 5 occasions in July (Counts 1, 3, 5, 7, 8
), August (Counts 13, 15, 17, 19, 20), September
(Counts 25, 27, 29, 31, 32), October (Counts 37,
39, 41, 43, 44), and November (Counts 49, 51, 53,
55, 56);

     2)    With sexual abuse by a custodian by engaging in
sexual intercourse with D.H. on 4 occasions in
July (Counts 2, 4, 6, 9), August (Counts 14, 16,
18, 21), September (Counts 26, 28, 30, 33),
October (Counts 38, 40, 42, 45), and November (50,
52, 54, 57);

     3)    With sexual abuse by a custodian by engaging in
sexual exploitation of D.H. by forcing her to have
sexual intercourse with another child (St.H.
Sh.H., and M.H.) on 3 occasions in July (Counts

13

10-12), August (Counts 22-24), September (Counts 34-36), October (Counts 46-48), and November (Counts 58-60);

4)  With First Degree Sexual Assault by having sexual intercourse with St.H., who was eleven years old or less, on 1 occasion in July (Count 64), August (Count 68), September (Count 72), October (Count 76), and November (Count 80);

5)  With sexual abuse by a custodian by engaging in sexual exploitation of St.H. by forcing him to have sexual intercourse with another child (D.H. Sh.H., and M.H.) on 3 occasions in July (Counts 61-63), August (Counts 65-67), September (Counts 69-71), October (Counts 73-75), and November (Counts 77-79);

6)  With First Degree Sexual Assault by having sexual intercourse with Sh.H., who was eleven years old or less, on 1 occasion in July (Count 84), August (Count 88), September (Count 92), October (Count 96), and November (Count 100);

7)  With sexual abuse by a custodian by engaging in sexual exploitation of Sh.H. by forcing her to have sexual intercourse with another child (D.H. St.H., and M.H.) on 3 occasions in July (Counts

14

81-83), August (Counts 85-87), September (Counts 89-91), October (Counts 93-95), and November (Counts 97-99);

8)       With First Degree Sexual Assault by having sexual intercourse with M.H., who was eleven years old or less, on 1 occasion in July (Count 104), August (Count 108), September (Count 112), October (Count 116), and November (Count 120); and

9)       With sexual abuse by a custodian by engaging in sexual exploitation of M.H. by forcing him to have sexual intercourse with another child (D.H. St.H., and Sh.H.) on 3 occasions in July (Counts 101-103), August (Counts 105-107), September (Counts 109-111), October (Counts 113-115), and November (Counts 117-119).

PF&R at 39-40.

"[U]nder West Virginia law, an indictment is not defective though it contains no allegation of the time of the offense, unless time is of the essence of it." Tincher v. Boles, 364 F.2d 497, 498 (4th Cir. 1966). Furthermore, under West Virginia law, "[i]t is well established . . . that time is not an element of sexually-based offenses." State v. Harris, 230 W. Va. 717, 724 n.1 (2013).

15

Moreover, the state court's decision in this regard was not contrary to, or an unreasonable application of, the standard announced by the Supreme Court in Hamling.   "[A]cknowledg[ing] the reality of situations where young child victims are involved. . . . numerous [courts] have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements." Valentine v. Konteh, 395 F. 3d 626, 632 (6th Cir. 2005); see also Dupont v. Coplan, 104 F. App'x 747, 749 (1st Cir. 2004) (finding sufficient an indictment charging state prisoner with sixty-nine counts of felonious sexual assault against his stepdaughter where indictment alleged month and year when such contact occurred); Fawcett v. Bablitch, 962 F.2d 617, 619 (7th Cir. 1992) (information alleging that defendant's sexual contact with minor occurred during a six-month period gave defendant sufficient notice to permit him to defend against charges); King v. Mirandy, Civil Action No. 2:12-CV-81, 2013 WL 6882280, *17 (N.D.W. Va. Dec. 31, 2013). (declining to award habeas relief based on sufficiency of indictment where "indictment told petitioner that he was being charged with having sexual contact and sexual intercourse with his stepdaughter on three occasions in March and/or April of 2002"); Dilworth v. Markle, 970 F. Supp.2d 498, 508 (N.D.W. Va. 2013) (finding indictment sufficient that charged state prisoner "with sexually touching his stepdaughter on ten

16

separate occasions in 2001"); <u>Voymas v. Unger</u>, No. 10-CV-2670023, *5 (W.D.N.Y. July 7, 2011) (finding that 4 and 1/2 month time span on rape charge and one year time span on sexual abuse charge was not unreasonable because victim was child); <u>State v. Reed</u>, 204 W. Va. 520, 524 (1999) (holding that variance between pleading and evidence with regard to time of commission of sexual assault did not require dismissal); <u>State v. Hensley</u>, 120 N.C. App. 313, 462 S.E.2d 550, 557 (1995) ("[Y]oung children cannot be expected to be exact regarding times and dates[.]").  Therefore, Whites's objection is OVERRULED.

        White's final objection is to Magistrate Judge VanDervort's conclusion that his sentence was not excessive.  Of the Eighth's Amendment's prohibition, our appeals court recently stated:

> The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII. Punishment is deemed cruel and unusual not only when it is "inherently barbaric," but also when it is disproportionate to the crime for which it is imposed.  <u>Graham v. Florida</u>, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L.Ed.2d 825 (2010); <u>see Weems v. United States</u>, 217 U.S. 349, 367, 30 S. Ct. 544, 54 L.Ed. 793 (1910) (referring to the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense").
>
> A defendant may challenge the proportionality of a sentence under the Eighth Amendment in two different ways. Under an "as-applied" challenge, a defendant contests the

length of a certain term-of-years sentence as
being disproportionate "given all the
circumstances in a particular case." <u>Graham</u>, 560
U.S. at 59, 130 S. Ct. 2011.  In a "categorical"
challenge, a defendant asserts that an entire
class of sentences is disproportionate based on
"the nature of the offense" or "the
characteristics of the offender." <u>Id.</u> at 60, 130
S. Ct. 2011. . . .

The Supreme Court has emphasized the
limited scope of both types of proportionality
challenges.  In the context of an as-applied
challenge, the Court has explained that the
"narrow proportionality principle" of the Eighth
Amendment "does not require strict
proportionality between crime and sentence," but
"forbids only extreme sentences that are grossly
disproportionate to the crime." <u>Graham</u>, 560 U.S.
at 59-60, 130 S. Ct. 2011 (quoting <u>Harmelin v.</u>
<u>Michigan</u>, 501 U.S. 957, 997, 1000-01, 111 S. Ct.
2680, 115 L.Ed.2d 836 (1991) (Kennedy, J.,
concurring)) (internal quotation marks omitted).
Before an appellate court concludes that a
sentence is grossly disproportionate based on an
as-applied challenge, the court first must
determine that a "threshold comparison" of the
gravity of the offense and the severity of the
sentence "leads to an inference of gross
disproportionality." <u>Id.</u> (quoting <u>Harmelin</u>, 501
U.S. at 1005, 111 S. Ct. 2680 (Kennedy, J.,
concurring)) (brackets omitted).  In the "rare
case" that a reviewing court concludes that such
an inference may be drawn, the court is required
to compare the defendant's sentence:  (1) to
sentences for other offenses in the same
jurisdiction; and (2) to sentences for similar
offenses in other jurisdictions. <u>Id.</u>  If this
extended analysis validates the threshold
determination that the sentence is grossly
disproportionate, the sentence is deemed "cruel
and unusual" punishment under the Eighth
Amendment. <u>Id.</u>

The Supreme Court has identified a
term-of-years sentence as being grossly
disproportionate on only one occasion.  In <u>Solem</u>
<u>v. Helm</u>, 463 U.S. 277, 103 S. Ct. 3001, 77

18

L.Ed.2d 637 (1983), a recidivist defendant had
been sentenced to life imprisonment without
parole for passing a bad check in the amount of
$100.  In reviewing the defendant's Eighth
Amendment challenge to his sentence, the Court
identified the following "objective criteria" to
be used in conducting a full proportionality
analysis:  (1) "the gravity of the offense and
the harshness of the penalty;" (2) "the sentences
imposed on other criminals in the same
jurisdiction;" and (3) "the sentences imposed for
commission of the same crime in other
jurisdictions." <u>Id.</u> at 292, 103 S. Ct. 3001.
Because the bad check crime was "one of the most
passive felonies a person could commit" and the
punishment was "the most severe" non-capital
sentence available, the Court inferred that the
defendant's sentence was grossly
disproportionate. <u>Id.</u> at 296-97, 103 S. Ct.
3001.  Accordingly, the Court conducted an
extended proportionality review, engaging in a
comparative analysis of other penalties and other
jurisdictions, and concluded that the defendant's
sentence was unconstitutional. <u>Id.</u> at 296-300,
103 S. Ct. 3001.

> Since the decision in <u>Solem</u>, no defendant
before the Supreme Court has been successful in
establishing even a threshold inference of gross
disproportionality. . . .

<u>United States v. Cobler</u>, 748 F.3d 570, 575-76 (4th Cir. 2014).

Against this backdrop, the court cannot say that a

threshold comparison of White's offenses and the severity of his

sentence is grossly disproportionate to his crimes.  <u>See</u> <u>United</u>

<u>States v. Cobler</u>, 748 F.3d 570, 580 (4th Cir. 2014) ("Given the

shocking and vile conduct underlying these criminal convictions,

we hold that Cobler has failed to substantiate the required

threshold inference of gross disproportionality.  Even assuming,

without deciding, that Cobler's 120-year term of imprisonment is

functionally equivalent to a sentence of life imprisonment without the possibility of parole, we conclude that Cobler's multiple child pornography crimes are at least as grave as the drug offense in Harmelin, which the Supreme Court deemed sufficiently egregious to justify a similar sentence."). White was convicted of thirty-one counts of first degree sexual assault and seventy-three counts of sexual abuse by a custodian. The conduct for which he was convicted was vile and shocking - - sexually abusing four children between the ages of 2 and 8. The trial court imposed statutorily authorized sentences, i.e., it did not exceed the statutory maximum. Furthermore, the majority of the sentences were ordered to run concurrently. Therefore, the court agrees with the findings of Magistrate Judge VanDervort that White's sentence of 110 to 220 years does not constitute cruel and unusual punishment under the Eighth Amendment and, for this reason, his objection is OVERRULED.

Based on the foregoing, the court adopts the Findings and Recommendations of Magistrate Judge VanDervort, **GRANTS** defendant's motion for summary judgment, **DISMISSES** plaintiff's petition under 28 U.S.C. § 2254, and directs the Clerk to remove the matter from the court's docket.

Additionally, the court has considered whether to grant a certificate of appealability. See 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial

20

showing of the denial of a constitutional right." 28 U.S.C. §
2253(c)(2). The standard is satisfied only upon a showing that
reasonable jurists would find that any assessment of the
constitutional claims by this court is debatable or wrong and
that any dispositive procedural ruling is likewise debatable.
<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003); <u>Slack v.</u>
<u>McDaniel</u>, 529 U.S. 473, 484 (2000); <u>Rose v. Lee</u>, 252 F.3d 676,
683-84 (4th Cir. 2001). The court concludes that the governing
standard is not satisfied in this instance. Accordingly, the
court DENIES a certificate of appealability.

The Clerk is directed to send copies of this Memorandum
Opinion and Order to counsel of record and to plaintiff pro se.

IT IS SO ORDERED this 29th day of September, 2014.

ENTER:

David A. Faber
Senior United States District Judge

21